THE PEOPLE *ex rel.* HAROLD C. WRIGHT, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. THE BOARD OF TRUSTEES OF THE TEACHERS' RETIREMENT SYSTEM, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

Second District   No. 2—86—0826

Opinion filed July 9, 1987.

Andrew M. Carter, of William J. Stogsdill, Jr., P.C., of Glen Ellyn, for appellant.

Louis W. Kosiba, of Illinois Teachers' Retirement System, of Springfield, for appellee.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Harold C. Wright, appeals from the judgment of the circuit court in favor of defendant, the Board of Trustees of the Teachers' Retirement System of the State of Illinois, in an action brought by plaintiff to prohibit defendant from terminating his pension. Defendant cross-appeals from the trial court's judgment dismissing its counterclaim. On appeal, plaintiff argues that a felony forfeiture provision of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 16—199) does not apply to him because he entered the system before its effective date. Defendant's cross-appeal seeks recovery of benefits paid to plaintiff after he pleaded guilty in Federal court to a felony related to his service as a teacher. Defendant argues that plaintiff was "convicted" when his guilty plea was accepted by the court and was not entitled to benefits after that date.

Plaintiff began teaching in the Illinois public school system in 1953, at which time he automatically became a member of the Teachers' Retirement System (the system). (See Ill. Ann. Stat., ch. 122, par. 591 (Smith-Hurd 1962 & Supp. 1987).) Plaintiff was a participant in the system through the 1955-56 school year, after which he left the system to teach in the Shelbyville, Indiana, School District. In October 1956, plaintiff applied for and received a refund of his contributions to the Illinois system.

Plaintiff returned to the Illinois system in 1962 when he began teaching in the Wheaton High School District. He was elected regional superintendent of schools for Du Page County in 1974, and served in that capacity until 1982, when he left the system again and went to work for the United States Department of Education. In October 1982, plaintiff applied to defendant to receive his benefits under the retirement system. He paid defendant $6,093.97 to reestablish his withdrawn service credit for the school years 1953-54 through 1955-56 and receive credit for the years spent in the Indiana school system. Plaintiff began receiving pension benefits from defendant in November 1982.

On May 3, 1985, plaintiff tendered his resignation to the Federal government and on July 15, 1985, he pleaded guilty in Federal district court to a felony charge which related to his service as regional superintendent of schools, a position covered by the system. The cause was continued until December 12, 1985, when a judgment of conviction was entered and sentence was imposed. In July 1985, defendant notified plaintiff that his retirement annuity and health insurance were terminated effective July 1, 1985, pursuant to section 16—199 of the Illinois Pension Code, which provides as follows:

"None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony related to or arising out of or in connection with his or her service as a teacher.

This Section shall not operate to impair any contract or vested right acquired prior to July 9, 1955 under any law or laws continued [sic] in this Article, nor to preclude the right to a refund.

All teachers entering service after July 9, 1955 shall be deemed to have consented to the provisions of this Section as a condition of membership." Ill. Rev. Stat. 1985, ch. 108½, par. 16—199.

Plaintiff subsequently made demand on defendant to reinstate his annuity payments, but defendant refused. On October 28, 1985, plaintiff filed an application for leave to file a complaint in *quo warranto* in the circuit court of Du Page County. The court granted leave to file the complaint, and the defendant filed its answer, affirmative defenses and counterclaim. The counterclaim alleged that defendant had already paid plaintiff more than the total of his refundable contributions and sought repayment of those funds, amounting to $5,662. The court issued a temporary injunction requiring defendant to resume payment of the pension. On July 22, 1986, the court granted defendant's motion for summary judgment, denied plaintiff's motion for summary judgment, and dismissed defendant's counterclaim with prejudice. The court found that plaintiff terminated his membership in the system in 1956 when he accepted his refund for the previous years and that his reentry into the system in 1962 and repayment to the system in 1982 did not entitle him to reinstatement of any contract rights he had previously had in the system.

The trial court also found that section 16—199 is inherently ambiguous because it fails to define "future entrant" and the court adopted the definition of "future entrant" contained in the policemen's annuity act (Ill. Rev. Stat. 1985, ch. 108½, par. 5—111). Sec-

tion 5—111 defines "future entrant," in relevant part, as "[a] former policeman of a city who reenters the police service on or after the effective date." (Ill. Rev. Stat. 1985, ch. 108½, par. 5—111(b).) Under this definition, the court found that plaintiff was precluded from asserting contract rights he had acquired prior to his reentry into the system in 1962.

The issue, then, is whether the felony forfeiture provision applies to a teacher who entered the system prior to July 9, 1955, terminated his membership therein by accepting a refund of contributions, then reentered the system after July 9, 1955, and was reinstated by repaying the refund pursuant to section 16—151 of the Illinois Pension Code.

Plaintiff argues that the court erred in applying the definition of "future entrant" contained in the policemen's annuity act to his situation. He contends that by failing to include this definition of "future entrant" in the Teachers' Retirement System, the legislature intended the term to have a different meaning. Defendant responds that since the two acts are similar except for the occupations covered, the legislature must have intended that the same definition apply to both.

The last paragraph of section 16—199 provides: "All teachers entering service after July 9, 1955" are deemed to have consented to the terms of the section as a condition of membership. In *Borg v. Village of Schiller Park Police Pension Board* (1984), 99 Ill. 2d 376, 459 N.E.2d 951, our supreme court held that section 3—147 of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 3—147) did not apply to that plaintiff, who became a policeman before 1955. (99 Ill. 2d 376, 459 N.E.2d 951; see also *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 546, 357 N.E.2d 582.) *Borg* and *Shanahan*, however, do not consider the circumstances of a plaintiff who left the system and subsequently returned. Defendant correctly notes that by applying for and accepting a refund in 1956, plaintiff terminated his membership in the system and forfeited any contractual rights thereunder. (Ill. Rev. Stat. 1985, ch. 108½, par. 16—151.) Defendant argues that when plaintiff reentered the system in 1962, his reentry was pursuant to an entirely new contract, one which included the felony forfeiture provision. Defendant points out that between 1956 and 1962, several additional benefits were added to the system. (See, *e.g.*, Ill. Rev. Stat. 1985, ch. 108½, pars. 16—140, 16—143.2.) Plaintiff paid the additional contributions thus required and does not contest the applicability to him of these beneficial sections.

Plaintiff argues, however, that section 16—151 serves to reinstate

all rights which he had previously acquired. That section provides that "all accrued rights and credits in the System *** may be reinstated only if the refund is repaid." (Ill. Rev. Stat. 1985, ch. 108½, par. 16—151.) The section further provides: "Repayment shall be permitted upon return to membership; however, service credit previously forfeited by a refund and subsequently reinstated may not be used as a basis for the payment of benefits, other than a refund ***." Upon applying for benefits in 1982, plaintiff paid over $6,000 to reestablish his credit for the years 1953-54 through 1955-56 (Ill. Rev. Stat. 1981, ch. 108½, par. 16—127) and receive credit for out-of-State service (Ill. Rev. Stat. 1981, ch. 108½, par. 16—128). All these sections, when read together, establish that the "rights" referred to are the rights to receive benefits determined with reference to the amount of accrued service credit. In plaintiff's case, these benefits included new benefits unavailable when plaintiff first entered the system in 1953. The rights plaintiff had in the system were those established by the new contract pursuant to statutory provisions effective in 1962. The only accrued "right" revived by this payment was the right to a larger annuity because of the reestablished service credit.

In the policemen's annuity fund relating to cities over 500,000 (Ill. Rev. Stat. 1985, ch. 108½, par. 5—101 *et seq.*), the legislature defined "future entrant" to include a policeman who terminates his membership in the fund but subsequently returns. (Ill. Rev. Stat. 1985, ch. 108½, par. 5-111; *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 357 N.E.2d 582.) Plaintiff points out that 16 of the 18 pension funds established by the Pension Code contained felony forfeiture provisions and, of those 16, 14 contain the same definition of "future entrant." He argues that since the Teachers' Retirement System is one of the two which do not contain this definition, the legislature must have intended that the definition not apply.

■ We do not think the legislature intended such a result. By referring to "accrued rights and benefits," the legislature could not have intended to preserve any accrued right to commit a felony and still receive a pension, as suggested by plaintiff. In construing a statute, the court's primary function is to discern and give effect to the intention of the legislature as determined from the reason for the enactment and the words used. (*Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 512, 382 N.E.2d 243, *cert. denied* (1979), 441 U.S. 923, 60 L. Ed. 2d 397, 99 S. Ct. 2032.) In *Borg v. Village of Schiller Park Police Pension Board* (1984), 99 Ill. 2d 376, 459 N.E.2d 951, the supreme court used the definition of "future entrant" from section 5—111 to determine that a felony forfeiture provi-

sion virtually identical to the one at issue here did not apply to the plaintiff, who had become a policeman before the provisions' effective date. Although the definition of "future entrant" did not appear in the portion of the code being considered, the court concluded it was reasonable to say the legislature intended a consistent meaning for the same language appearing in different sections of the same statute. 99 Ill. 2d 376, 381, 459 N.E.2d 951.

■■ ■ This reasoning applies equally well to the present case. Although section 16—199 refers to "teachers entering service after July 9, 1955," as opposed to "future entrant," the parties do not contend that the different language itself was intended to convey a different meaning. The phrases are sufficiently similar that we do not attach any significance to the slightly different language. Obviously, the purpose of section 16—199 is to deny pension benefits to anyone convicted of a felony related to the service for which he is to receive the pension. (See *Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 512, 382 N.E.2d 243, *cert. denied* (1979), 441 U.S. 923, 60 L. Ed. 2d 397, 99 S. Ct. 2032.) The legislature created an exception for those who began their service before the effective date of the forfeiture provision and it is consistent with the purpose of the statute to construe that exception narrowly so as not to apply it to one who left the system and returned. This is especially true where the legislature has expressly stated this policy in other sections of the same statute. (See *Kerner v. State Employees' Retirement System* (1977), 53 Ill. App. 3d 747, 750-51, 368 N.E.2d 1118, *aff'd* (1978), 72 Ill. 2d 507, 382 N.E.2d 243, *cert. denied* (1979), 441 U.S. 923, 60 L. Ed. 2d 397, 99 S. Ct. 2032.) We conclude the trial court did not err in applying the definition of "future entrant" from section 5—111 to section 16—199 and that plaintiff's request for continued annuity payments was properly denied.

We turn now to the issue raised in defendant's cross-appeal. Although plaintiff has not responded to this issue in his brief, we consider it under the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Defendant contends that it is permitted to maintain an action to recover payments made to a convicted felon in excess of refundable contributions, and that the trial court erred in dismissing its counterclaim and in ordering it to continue payment to plaintiff through December 12, 1985.

Plaintiff pleaded guilty on July 15, 1985, but sentence and judgment of conviction were not entered until December 12, 1985. Defendant's counterclaim alleged that a convicted felon is not entitled to any

benefits from the system, except a refund of his contributions; that by June 30, 1985, defendant had paid plaintiff $5,662 in excess of his refundable contribution; and that defendant has the right to recover this excess. The trial court's final order disposing of the cause found that plaintiff was not "convicted" within the meaning of section 16—199 until December 12, 1985; that the statute contains no provision for recoupment of excess funds paid by the system; and further ordered defendant to pay benefits to plaintiff through December 12, 1985.

■■ Defendant argues that plaintiff was "convicted" within the common meaning of the term on July 15, 1985, when he pleaded guilty. We disagree. *People ex rel. Grogan v. Lisinski* (1983), 113 Ill. App. 3d 276, 446 N.E.2d 1251, addressed an analogous question under section 29—15 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 29—15), which prohibited a person convicted of an infamous crime from holding elective office. The court, although recognizing the obvious purpose of the statute, concluded that a public official was entitled to his day in court and rejected plaintiff's contention that a public official was "convicted" when he was found guilty. (113 Ill. App. 3d 276, 279-81, 446 N.E.2d 1251.) In addition, we observe that under both Illinois and Federal criminal law a "conviction" results from a judgment or sentence upon the finding of guilty. (Ill. Rev. Stat. 1985, ch. 38, par. 2—5; Fed. R. Crim. P. 32(b)(1).) We conclude that the trial court properly found that plaintiff in this case was not convicted of a felony until his judgment of conviction and sentence were entered on December 12, 1985.

■■ We also do not agree with defendant's argument that it can recover annuity payments made to a convicted felon prior to his conviction. In *Janata v. Police Pension Fund* (1986), 140 Ill. App. 3d 925, 489 N.E.2d 498, the court interpreted section 3—147 of the Illinois Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 3—147), which contains language virtually identical to section 16—199. The court determined that under the plain meaning of the statute a pension board cannot stop payments made prior to the conviction or recoup payments made prior to that date. (140 Ill. App. 3d 925, 926-27, 489 N.E.2d 498.) We agree with the reasoning in *Janata,* and find that the trial court correctly concluded that the statute contains no provision for recoupment of funds paid to him by the system prior to plaintiff's conviction.

The trial court correctly concluded that plaintiff reentered the system in 1962 pursuant to a new contract which included the felony forfeiture provision and that, as a result of his conviction, plaintiff is not entitled to receive benefits from the system. The portion of its

judgment granting summary judgment to defendant on plaintiff's complaint is affirmed. The portion of the judgment dismissing defendant's counterclaim and ordering defendant to pay the plaintiff benefits through December 12, 1985, is also affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.