(No. 80873.—

TAKAYOSHI MATSUDA, Appellee, v. THE COOK COUNTY EMPLOYEES' AND OFFICERS' ANNUITY AND BENEFIT FUND et al., Appellants.

*Opinion filed September 18, 1997.—Rehearing denied December 1, 1997.*

Jack O'Malley and Richard A. Devine, State's Attorneys, of Chicago (Patricia M. Shymanski, Patricia M. Moser, Mary Scarlett Wilson and Donna M. Lach, Assistant State's Attorneys, of counsel), for appellants.

Alan R. Borlack and Clement J. Carroll, of Bailey, Borlack, Nadelhoffer & Carroll, of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

At issue is whether appellants, the Cook County Employees' and Officers' Annuity and Benefit Fund and the Retirement Board of the County Employees' Annuity and Benefit Fund of Cook County (hereinafter the Funds), during the period relevant to this dispute, could set up an excess benefit fund as required by section 1—116 of the Illinois Pension Code (40 ILCS 5/1—116 (West 1996)) without violating section 415 of the Internal Revenue Code (26 U.S.C. § 415 (1988)). The trial court held that the Funds could not and granted their combined motion for summary judgment. The appellate court reversed. 278 Ill. App. 3d 378. For the reasons that follow, we affirm the appellate court's decision.

## BACKGROUND

Appellee, Dr. Takayoshi Matsuda, an employee of Cook County Hospital for 24 years, retired on May 29, 1993, at age 55. As an employee of Cook County, Dr. Matsuda was a contributing member of the Annuity and Benefit Fund, an annuity and benefit fund established and operated under article 9 of the Illinois Pension Code. 40 ILCS 5/9—101 et seq. (West 1992).

On September 16, 1992, the Illinois General Assembly enacted section 9—134.2 of the Illinois Pension Code to provide early retirement incentives to certain members of the Annuity and Benefit Fund. Section 9—134.2 specifically provided that a contributing member would receive a specified increase in his retirement annuity without any reduction in benefits otherwise caused by retiring below age 60 if that member: (1) filed a written application with the Retirement Board before May 1, 1993, requesting early retirement benefits;

(2) elected to retire between December 1, 1992, and May 29, 1993; (3) attained the age of 55 on or before the date of retirement; and (4) provided at least 10 years of service prior to retirement. 40 ILCS 5/9—134.2 (West 1996).

In November of 1992, the Funds mailed to Dr. Matsuda unsolicited information regarding the requirements and advantages of the new early retirement incentives, including an estimated personal benefit statement subject to final audit. On April 30, 1993, Dr. Matsuda, who met all the necessary requirements, filed an early retirement application stating that he would retire on May 29, 1993. The Funds subsequently sent Dr. Matsuda an estimated personal benefit statement dated May 13, 1993, calculating that if Dr. Matsuda took early retirement and made additional contributions of $60,317.84 his monthly annuity would amount to $9,967.31. On May 26, 1993, Dr. Matsuda contributed $60,317.84, and three days later he retired.

Several months later, the Funds notified Dr. Matsuda that his monthly annuity would amount to $7,219.85, substantially lower than the previous estimate of $9,967.31, because of the limitations set forth in section 415 of the Internal Revenue Code for qualified retirement plans. 26 U.S.C. § 415 (1988). On December 23, 1993, Dr. Matsuda filed a complaint against the Funds in the circuit court of Cook County, alleging, *inter alia*, that the Funds violated section 1—116 of the Illinois Pension Code by failing to establish an excess benefit fund to pay out his earned benefits that exceeded any limits set by section 415 of the Internal Revenue Code. The Funds responded by filing a joint motion for summary judgment in which they asserted that, as a matter of federal law, they were prohibited from establishing an excess benefit fund. The trial court granted the Funds' motion for summary judgment. The appellate court reversed and remanded, holding that

section 415 of the Internal Revenue Code did not prohibit the Funds from setting up an excess benefit fund as required by section 1—116 of the Illinois Pension Code. 278 Ill. App. 3d 378.

Subsequent to this court's granting the Funds' petition for leave to appeal to this court, Congress amended section 415 of the Internal Revenue Code by adding section 415(m). 26 U.S.C. § 415(m) (1997). Both parties agree that section 415(m) of the Internal Revenue Code permits the Funds to provide Dr. Matsuda with benefits in excess of section 415's limitations. Moreover, both parties agree that Congress indicated that section 415(m) would apply beginning January 1, 1995, or 19 months after Dr. Matsuda retired. At issue, then, is whether section 415 prohibited the Funds from establishing an excess benefit fund pursuant to section 1—116 of the Illinois Pension Code during this interim 19-month period.

## ANALYSIS

We commence by noting that interpreting or construing a statute is a matter of law for the court and appropriate for summary judgment; however, such a drastic measure should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). To this end, we conduct a *de novo* review. *Delaney v. McDonald's Corp.*, 158 Ill. 2d 465, 467 (1994).

Article 9 of the Illinois Pension Code governs both the Fund and the Retirement Board. See 40 ILCS 5/9—101 *et seq.* (West 1992). Section 9—150(3) provides:

"Notwithstanding any other provision of this Article, any benefit payable under this Article which would otherwise exceed the maximum limitations on benefits provided by 'qualified plans' as set forth in Section 415 of the federal Internal Revenue Code of 1986, as now or here-

after amended, or any successor thereto, shall be paid only in accordance with Section 1—116 of this Code." 40 ILCS 5/9—150(3) (West 1992).

Section 1—116 of the Illinois Pension Code, referred to in the above statute, provides as follows:

"Federal benefit limitation.

(a) This Section shall apply only to pension funds and retirement systems established under Article 2, 7, 8, 9, 11, 13, 14, 15, 16 or 18.

(b) If any benefit payable by a pension fund or retirement system subject to this Section exceeds the applicable benefit limits set by Section 415 of the U.S. Internal Revenue Code of 1986 for tax qualified plans under Section 401(a) of that Code, the excess shall be payable only from an excess benefit fund established under this Section in accordance with federal law.

(c) An excess benefit fund shall be established by any pension fund or retirement system subject to this Section that has any member eligible to receive a benefit that exceeds the applicable benefit limits set by Section 415 of the U.S. Internal Revenue Code of 1986 for tax qualified plans under Section 401(a) of that Code. Amounts shall be credited to the excess benefit fund, and payments for excess benefits made from the excess benefit fund, in a manner consistent with the applicable federal law." 40 ILCS 5/1—116 (West 1996).

Section 415 of the Internal Revenue Code, referred to in both of the above Illinois statutes, limits the employer share of Dr. Matsuda's pension benefits to $75,000 per year or $6,250.00 per month ($7,219.85 when the $969.85 employee portion is included). 26 U.S.C. § 415(b)(2)(F)(i)(II) (1988).

We must first attempt to ascertain and give effect to the legislature's intent regarding the statutes at issue by considering their language, as this affords the best means of deciphering legislative intent. *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 390 (1992). We note, however, that the language of Illinois' pension statutes must be liberally construed in

favor of the rights of the pensioner. *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 521 (1986). We must also avoid interpretations that render the statutes at issue "insignificant, meaningless, inoperative, or nugatory." *Pliakos v. Illinois Liquor Control Comm'n*, 11 Ill. 2d 456, 460 (1957).

We observe that section 1—116(c) mandates that "[a]n excess benefit fund *shall* be established" for any member whose benefits exceed those limited by section 415 of the Internal Revenue Code and that payments for such excess benefits shall be made "in a manner consistent with applicable federal law." (Emphasis added.) 40 ILCS 5/1—116(c) (West 1996). While the Funds acknowledge section 1—116's mandate, they nevertheless assert that the Pension Code required the Funds to remain tax qualified and that the mandate could not be complied with because it conflicted with section 415's ceiling. Specifically, the Funds contend that section 415 prohibited the Annuity and Benefit Fund, as a qualified governmental plan, from establishing a nonqualified excess benefit fund or from using its qualified assets to pay such excess benefits.

In support of their contention that they could not fully comply with section 1—116, the Funds offer the following IRS letter written in 1991:

"Question 10. Would section 415 of the Code be violated if a governmental plan transferred amounts in excess of the section 415 limits to a nonqualified arrangement for distribution to the participant who had the excess?

A. Yes. Governmental plans would violate section 415 by transferring amounts that exceed section 415 under a qualified plan from that plan to a nonqualified arrangement, and distributing those benefits from the nonqualified arrangement. Such a spin-off of qualified funds may also violate other qualification requirements, such as the exclusive benefit rule under Section 401(a)(2)." IRS Information Letter on Section 415 Limitations on Public Plans, 18 Pensions and Benefits (BNA) No. 34, at 1,552 (August 26, 1991).

The Funds argue that this letter is dispositive of the instant case because the funding scheme of article 9 of the Pension Code did not provide a mechanism through which a nonqualified excess benefit fund could be funded independently without transferring assets directly from the Annuity and Benefit Fund itself. As noted by the Funds, section 1—116 mandates the creation of an excess benefit fund which, the Funds contend, is a spinoff from the Annuity Benefit Fund because assets from the latter are transferred directly to the former. The Funds therefore posit that the IRS letter and the funding scheme of article 9 indicate that the IRS is likely to view the establishment of a nonqualified excess benefit fund pursuant to section 1—116 of the Illinois Pension Code as a violation of the Annuity and Benefit Fund's tax qualified status.

The Funds correctly observe that article 9's funding scheme does not specifically provide the means for independently funding an excess benefit fund pursuant to section 1—116. However, this fact does not necessarily mean that the IRS would consider that such an excess benefit fund violated federal law. Indeed, we find absolutely nothing within the Internal Revenue Code that prohibits government plans from setting up excess benefit funds pursuant to section 1—116. Moreover, we note that this IRS letter specifically provides: "This is not a ruling, however, and may not be relied on with respect to any transaction." IRS Information Letter on Section 415 Limitations on Public Plans, 18 Pensions and Benefits (BNA) No. 34, at 1,552 (August 26, 1991). This letter merely advises against transfers between qualified and nonqualified plans, and therefore falls short of proving that, as a matter of federal law, the Funds could not separately establish a nonqualified plan to pay out benefits in excess of section 415's limits.

The Funds further assert, however, that section

415(m), amending section 415 of the Internal Revenue Code to allow for excess benefit plans such as called for in section 1—116, indicates that the Internal Revenue Code did not permit the Funds to establish an excess benefit fund and still maintain their tax qualified status prior to this amendment. In support of this assertion, the Funds argue that if a qualified governmental pension plan could have paid benefits exceeding the section 415 cap by paying supplemental benefits through an excess benefit fund, then section 415(m) would not have been necessary.

As the Funds correctly observe, an amendment to a federal statute creates a presumption that Congress intended to change the law. *Stone v. Immigration & Naturalization Service*, 514 U.S. 386, 397-98, 131 L. Ed. 2d 465, 476-77, 115 S. Ct. 1537, 1545 (1995). However, we agree with Dr. Matsuda that section 415(m) does change the law to the extent that it now allows government entities to establish a qualified governmental excess benefit arrangement as part of their qualified plans. This permits the Funds to pay excess benefits out of their qualified plan without having to first establish and fund a separate nonqualified excess benefit fund as contemplated in section 1—116. In other words, this amendment makes it easier and less expensive for such government entities to set up excess benefit funds for their employees. Section 415(m) does not therefore prove that establishing an excess benefit fund pursuant to section 1—116 would have violated the Internal Revenue Code.

The Funds next assert that section 1—116's mandate to set up a nonqualified excess benefit fund was contingent upon enabling federal legislation, which did not exist until Congress passed section 415(m). The Funds note that in 1991 section 1—116(c) provided in part: "An excess benefit fund shall be established *as a special fund*

*in the State Treasury for* any pension fund or retirement system subject to this Section ***." (Emphasis added.) 40 ILCS 5/1—116(c) (West 1992). The Funds point out that in 1993 the state legislature amended section 1—116 to provide in part: "An excess benefit fund shall be established *by* any pension fund or retirement system subject to this Section ***." (Emphasis added.) 40 ILCS 5/1—116 (West 1996). The Funds interpret the language in the 1991 version of section 1—116 as establishing an excess benefit fund through the state treasury, thereby avoiding section 415's ceiling. In contrast, the Funds interpret the amended language in the 1993 version of section 1—116 as providing for funding to pass through the Annuity and Benefit Fund itself rather than through the state treasury, thus causing the excess benefit fund under section 1—116 to run afoul of section 415's limitations at that time. The Funds infer from all this that the state legislature intended that the 1991 version of section 1—116 would be operative and noncontingent but that the 1993 version of section 1—116 would be inoperative and silently contingent upon unspecified, future federal enabling legislation.

What the Funds' argument fails to explain, however, is why the state legislature would amend section 1—116, in the manner proffered by the Funds, when that section already provided for an excess benefit fund that fully complied with section 415's ceiling. It would be anomalous to suggest that the state legislature intended to amend section 1—116 to become inoperative and silently contingent upon future federal enabling legislation without detailing this intent in the statute. Indeed, the Funds fail to cite any language whatsoever in either the Illinois Pension Code or the Internal Revenue Code that even remotely supports their interpretation of section 1—116. We therefore reject the Funds' contention that the 1993 amendments to section 1—116 operated to

make the continuation of excess benefit funds contingent upon future federal legislation, as this interpretation would have rendered section 1—116 inoperative and meaningless. See *Pliakos v. Illinois Liquor Control Comm'n*, 11 Ill. 2d 456, 460 (1957) (holding that courts should avoid interpretations that render a statute "meaningless, inoperative, or nugatory"). We instead conclude that the state legislature amended section 1—116 in 1993 quite simply to allow pension funds to establish excess benefit funds directly.

## CONCLUSION

For the foregoing reasons, we affirm the appellate court's reversal of the trial court's order granting the Funds' motion for summary judgment.

*Appellate court judgment affirmed.*