DAVID J. SHIELDS, Plaintiff-Appellee, v. THE JUDGES' RETIREMENT SYSTEM OF ILLINOIS *et al.*, Defendants-Appellants.

First District (1st Division)    No. 1—00—4133

━━━━━

Opinion filed November 5, 2001.—Rehearing denied May 9, 2002.

TULLY, J., dissenting.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellants.

George B. Collins and Adrian Vuckovich, both of Collins & Bargione, of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

The Judges' Retirement System of Illinois (the System) terminated the retirement benefits of former judge David J. Shields when he was convicted of a felony in March 1992. Shields sought a refund of all the contributions that he made into the System over the years, which totaled $113,222.04. The Board of Trustees of the Judges' Retirement System (the Board) held that Shields was entitled to a refund of $37,873.27, which represents his contributions less benefits paid to him prior to the termination of his benefits. Shields sought administrative review. The circuit court reversed the decision of the Board. The System and the Board now appeal the circuit court's reversal. The primary issue upon appeal is whether the Board correctly determined that Shields is entitled to a refund of his contributions ($113,222.04) less benefits paid to him prior to his conviction ($75,348.77), for a total refund of $37,873.27.

## BACKGROUND

In June 1971, David J. Shields was appointed as a magistrate in the 21st Judicial Circuit. Soon thereafter, the Judges' Retirement System notified Shields that he was eligible to participate in the System's pension plan. He elected to participate and made contributions in the form of salary deductions beginning in August 1971.

In November 1990, Shields applied for retirement benefits from the System, indicating that he was retiring from service in December 1990. As of December 3, 1990, Shields had contributed a total of $113,222.04 to the System. He began receiving retirement benefits of approximately $5,100 per month, effective December 13, 1990.

On December 19, 1990, Shields was indicted on seven counts, including conspiracy to engage in extortion, attempted extortion, and knowingly making false statements of material fact to the Federal Bureau of Investigation. Shields was convicted on all seven counts of the indictment. He was sentenced to 37 months in prison plus 3 years' supervised release and was fined $6,000. The conviction was upheld upon appeal. See *United States v. Shields*, 999 F.2d 1090 (7th Cir. 1993).

In a letter dated March 17, 1992, the System notified Shields that his benefits would be terminated, effective the day of his conviction, March 2, 1992, pursuant to section 18—163 of the Illinois Pension Code (the Pension Code) (40 ILCS 5/18—163 (West 1992)). The letter indicated that Shields was entitled to a refund of his contributions ($113,222.04) less benefits paid to him prior to his conviction

($75,348.77), for a total refund of $37,873.27. The letter noted that Shields could appeal the System's decision to the Board.

In a letter dated August 19, 1999, the System asked the office of the Attorney General to review the indictments and certified copies of Shield's conviction. The System requested an "unofficial opinion" as to whether Shields' conviction fell within the "Felony Conviction Forfeiture Provision, Section 18—163, of the Judges' Retirement System Pension Code, therefore forfeiting Shields' right to receive pension benefits."

Senior Assistant Attorney General Michael Luke commented "informally" that each of Shields' offenses is a felony under federal law and that the offenses for which he was convicted arose from and were connected to his service as a judge. It was Luke's opinion that the Board "may properly find that Mr. Shields is prohibited from receiving any benefits from the Judges' Retirement System subsequent to the date upon which he was sentenced" because he was convicted of felonies relating to or arising out of his service as a judge. Moreover, the Board may refund to him his contributions to the System, to the extent that those contributions exceed benefits already paid.

At the December 1999 Board meeting, the Board reviewed Shields' file along with the recommendation from the Attorney General's office. The Board held that, pursuant to section 18—163 of the Pension Code (40 ILCS 5/18—163 (West 1992)), Shields is prohibited from receiving any benefits from the System subsequent to the date of sentencing as a result of the felony conviction relating to and arising out of his service as a judge. A refund of $37,873.27 would be refunded to Shields.

Notice of the Board's findings and Shields' right to a hearing were provided to him on December 6, 1999. The Board notified Shields of its decision and stated that if he wished to appeal the decision, he must do so within 30 days from the date of the letter.

Shields appealed the decision of the Board and a hearing was heard on his appeal in January 2000. A bystander's record of testimony presented at the hearing is provided in the record. Shields argued that his retirement payments of $75,348.77 should not be deducted from his total contributions when paying a refund to him. It was his position that he was entitled to a principal payment of $113,222.04, plus interest on the refund at the statutory rate of 5% *per annum* from the date of the termination of pension payments until the refund is paid. Finally, Shields presented his intent to seek a federal pardon from the President of the United States and indicated that he did not want to waive the rights to a pension should such pardon be granted.

At its meeting in April 2000, the Board held that Shields was

entitled to a total refund of $37,873.27 and was not entitled to interest on that amount. The Board issued its written findings and decision regarding Shields' appeal in April 2000. In its written findings, the Board noted that while Shields' felony conviction did not preclude him from receiving a refund, section 18—163 of the Pension Code (40 ILCS 5/18—163 (West 1992)) did not offer instruction as to how to calculate the amount of the refund upon termination of his benefits.

Therefore, the Board relied on section 18—129(c) (40 ILCS 5/18—129(c) (West 1992)) in calculating the amount of Shields' refund. The Board stated that "the statute should not be read to benefit an annuitant whose pension benefits are terminated by felony conviction over an annuitant whose benefits are terminated by death." The Board further reasoned that if the System were required to follow Shields' rationale, future annuitants whose benefits are terminated by a felony conviction will be entitled to a full refund of all contributions even if the retirement benefits received by the annuitant far exceeded the contributions made by that annuitant. The Board held that the amount that Shields was entitled to equaled $37,873.27, representing $25,731.85 in contributions for survivor's benefits and $12,141.42 in contributions for retirement benefits and automatic increases in excess of retirement benefits paid. Also, interest would not be paid on the refund of Shields' contributions.

Shields appealed to the circuit court of Cook County for administrative review of the Board's decision. After oral argument, the circuit court judge reversed the findings and decision of the Board, stating:

"I do so almost exclusively based upon the language of the *Jinada* [*sic*] case, which I do not think is distinguishable solely because of the fact that there is a policeman involved. I think that that case takes into consideration language which is substantially identical to the language contained in the Judges' Retirement System and in the statute.

\* \* \*

With the same view in fact, though it has not been brought to my attention as of this time, I find that he is not entitled to interest, and the reason he is not entitled to interest is because I think that the way the statute should be interpreted without his ever having made a demand for the interest, I think it would be inappropriate for him to receive it under these circumstances."

The System was ordered to pay Shields "a full refund of all contributions paid in by Plaintiff in the amount of $113,222.04 less the sum of $37,873.27, for a net refund of $75,348.77." The circuit court's decision was stayed pending appeal.

## ANALYSIS

Defendants assert that the Board correctly refunded Shields the difference between the sum of contributions that he made to the System and the sum of pension benefits he received from the System. Shields asserts that the plain language of the statutes provide that he should receive a refund of his total contributions to the System, without deduction for benefits lawfully paid to him while in retirement status.

■ As the reviewing court, we review the decision of the Board, not that of the circuit court. *AFM Messenger Service, Inc. v. Department of Employment Security*, 315 Ill. App. 3d 308, 312, 733 N.E.2d 749 (2000). Section 18—164 of the Illinois Pension Code provides that judicial review of a final decision of the Board is governed by the provisions of the Administrative Review Law (735 ILCS 5/3—110 (West 1994)). 40 ILCS 5/18—164 (West 1992). Factual findings and factual conclusions of the Board shall be held by the reviewing court to be *prima facie* true and correct (735 ILCS 5/3—110 (West 1992)) and will not be disturbed on review unless they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998). The Board's conclusions of law, however, are not entitled to the same deference and are subject to *de novo* review. *AFM Messenger Service, Inc.*, 315 Ill. App. 3d at 312.

■ While conclusions of law are not entitled to the same deference on review as is accorded to an agency's factual findings and conclusions, substantial weight and deference are given to an interpretation of a statute by an agency that is charged with administering the statute because that agency makes informed judgments based on its experience and expertise. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992).

■ It is well settled in Illinois that public employee pensions are a matter of contractual right. *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 1007, 714 N.E.2d 11 (1999). However, the state legislature has the power to take action to deter felonious conduct in public employment by affecting the pension rights of public employees convicted of a work-related felony. *Stillo*, 305 Ill. App. 3d at 1007. The underlying purpose of a pension forfeiture statute is to discourage official malfeasance by causing a forfeiture of benefits to which a public official otherwise would be entitled. *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 513, 382 N.E.2d 243 (1978).

■ Section 18—163 of the Pension Code provides, in pertinent part:

"None of the benefits herein provided shall be paid to any person

who is convicted of any felony relating to or arising out of or in connection with his or her service as a judge.

This Section shall not operate to impair any contract or vested right acquired before July 9, 1955 under any law or laws continued in this Article, nor to preclude the right to a refund.

All participants entering service subsequent to July 9, 1955 are deemed to have consented to the provisions of this Section as a condition of participation." 40 ILCS 5/18—163 (West 1992).

The plain language of section 18—163 (40 ILCS 5/18—163 (West 1992)) indicates that a member of the pension fund who is convicted of a felony shall thereafter receive no pension benefits, with only an entitlement to a contribution refund. What is lacking is the method for calculating that refund.

■ To ascertain the legislature's intent, we first look to the plain language of the statute. *Cirignani v. Municipal Employees', Officers', & Officials' Annuity & Benefit Fund*, 317 Ill. App. 3d 732, 735, 739 N.E.2d 1063 (2000). Legislative intent must be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from different constructions. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283 (1990). The language of pension statutes must also be liberally construed in favor of the rights of the pensioner. *Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 178 Ill. 2d 360, 365-66, 687 N.E.2d 866 (1997).

In its written findings, the Board stated:

"Section 18—163 (the felony forfeiture provision) only indicates that a felony conviction does not preclude the right to a refund but does not describe how to calculate or determine the amount of the refund to which Petitioner might be entitled[;] *** the System must look to Section 18—129, the refund of contributions section, in order to determine the amount of the refund to which Petitioner is entitled."

■ Section 18—129(a) of the Code provides, in pertinent part:

"A *participant who ceases to be a judge may*, upon application to the board, *receive a refund of his or her total contributions* to the system including the contributions made towards the automatic increase in retirement annuity and contributions for the survivor's annuity *without interest, provided he or she is not then immediately eligible to receive a retirement annuity*." (Emphasis added.) 40 ILCS 18—129(a) (West 1992).

Section 18—129(c) of the Code states, in pertinent part:

"*Upon death of an annuitant*, where no spouse or other beneficiaries eligible for an annuity survive, the designated beneficiary or estate shall receive a refund of the contributions made for the

survivor's annuity, without interest. *If the annuitant received annuity payments in the aggregate less than his or her contributions* for retirement annuity and the contributions towards the automatic increase in the retirement annuity, *the designated beneficiary or estate shall also be refunded the difference between the total of such contributions, excluding interest, and the sum* of the annuity *payments made.*" (Emphasis added.) 40 ILCS 18—129(c) (West 1992). It was the Board's determination that subsection (c) of section 18—129 (40 ILCS 5/18—129(c) (West 1992)), as opposed to subsection (a) (40 ILCS 5/18—129(a) (West 1992)), applied to the calculation of a refund for an annuitant whose benefits are terminated as the result of a felony forfeiture.

In deciding that subsection (c) of section 18—129 (40 ILCS 5/18—129(c) (West 1992)), as opposed to subsection (a) (40 ILCS 5/18—129(a) (West 1992)), applied to the calculation of a refund for an annuitant whose benefits are terminated as the result of a felony forfeiture, the Board reasoned:

"To determine otherwise would mean that a member of the System who has retired and is receiving a retirement annuity and whose benefits are terminated as the result of a felony conviction would receive more in benefits than a member of the System who has received a retirement annuity for the same length of time but whose benefits are terminated by death."

We agree with the Board's determination.

Shields contends that his conviction stops future pension payments but does not authorize the deduction of lawful pension payments made in the past from the total refund due. Shields relies on *Janata v. Police Pension Fund,* 140 Ill. App. 3d 925, 489 N.E.2d 498 (1986). In *Janata,* former police officer Bruce Palumbo was indicted by a federal grand jury in September 1983 for using his position as a police officer to commit violations of Title 18, sections 371 and 1341, of the United States Code (18 U.S.C. §§ 371, 1341 (1976)). *Janata,* 140 Ill. App. 3d at 926. In December 1983, Palumbo was awarded a line-of-duty disability pension. See Ill. Rev. Stat. 1983, ch. 108½, par. 3—114.1. On April 24, 1984, Palumbo was found guilty of the charges and was sentenced to a term of two years' imprisonment.

In May 1984, the board of trustees of the police pension fund of the Village of Hillside conducted a special meeting to discuss Palumbo's pension. The board of trustees decided that, as of the date of his conviction, Palumbo's pension was terminated and he could retain the disability pension payments made to him from December 1983 to April 1984. *Janata,* 140 Ill. App. 3d at 926.

Charles Janata, chief of police of the Village of Hillside, Illinois,

upon appeal, contended that the board of trustees erred in not ordering Palumbo to repay the pension monies paid to him from December 1983 to April 1984. Plaintiff argued that the board of trustees should not have refunded Palumbo's contributions to the fund until it had deducted the pension payments Palumbo received during that time. Plaintiff maintained that the statute mandated such repayment. The appellate court disagreed. *Janata*, 140 Ill. App. 3d at 927.

The appellate court reviewed the Illinois Pension Code, which provided that "[n]one of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as policeman." Ill. Rev. Stat. 1983, ch. 108$\frac{1}{2}$, par. 3—147. The court held, "The plain meaning of the statute in question is that a member of the pension fund who is convicted of a felony shall thereafter receive no pension benefits, with only an entitlement to a refund of his contribution." *Janata*, 140 Ill. App. 3d at 927. The court noted that there was no language in the statute that would permit a pension board to halt payments before the conviction or to recoup payments made prior to that date. *Janata*, 140 Ill. App. 3d at 927. The appellate court stated, "[A]s it is required to do, the pension board followed the clear mandate of the statute." *Janata*, 140 Ill. App. 3d at 927.

In our view, Shields' reliance on *Janata* is misplaced. In *Janata*, the appellate court writes: "Plaintiff argues that the pension board should not refund Palumbo's contributions to the fund until it has deducted the pension payments Palumbo received during that time." *Janata*, 140 Ill. App. 3d at 926. There, the plaintiff was seeking repayment of benefits paid to the pensioner prior to his conviction. Importantly, in *Janata*, unlike the instant case, the appellate court did not address what method, if any, would be followed in calculating Palumbo's contribution refund. As the board of trustees wrote in the instant case: "Section 18—163 *** does not describe how to calculate or determine the amount of the refund to which Petitioner might be entitled ***." After considering sections 18—163 (40 ILCS 5/18—163 (West 1992)) and 18—129(c) (40 ILCS 5/18—129(c) (West 1992)), we hold that the Board in the instant case followed the proper method to determine petitioner's refund.

Shields also relies on *People ex rel. Wright v. Board of Trustees of Teachers' Retirement System*, 157 Ill. App. 3d 573, 510 N.E.2d 1283 (1987). In *Wright*, Harold Wright, a former public school teacher, argued that the felony forfeiture provision of the Illinois Pension Code did not apply to him because he entered the system before its effective date. *Wright*, 157 Ill. App. 3d at 574. The board of trustees of the Teachers' Retirement System argued that Wright was convicted when

his guilty plea was accepted by the court and was not entitled to benefits after that date.

Wright began teaching in the Illinois public school system in 1953. He left the system in 1956 and returned to the system as a teacher in 1962. He was elected regional superintendent of schools for Du Page County in 1974 and served in that capacity until 1982, when he left the system again and went to work for the United States Department of Education. In October 1982, Wright applied to receive his benefits under the retirement system. He repaid over $6,000 to reestablish his withdrawn service credit for the school years in 1953 though 1956 and to received credit for the year spent in another state's school system. *Wright*, 157 Ill. App. 3d at 574. He began receiving pension benefits from the board in November 1982. In July 1985, he pleaded guilty to a felony charge which related to his service as regional superintendent of schools. In July 1985, the board of trustees notified Wright that his retirement annuity and health insurance were terminated. On December 12, 1985, judgment of conviction was entered and a sentence was imposed. *Wright*, 157 Ill. App. 3d at 575.

Wright subsequently made demand on the board of trustees to reinstate his annuity payments, but the board refused. Wright filed a complaint in *quo warranto* in the circuit court of Du Page County. Defendant filed a counterclaim alleging that Wright had already been paid more than his refundable contributions and sought repayment of those funds. The trial court granted defendant's motion for summary judgment and dismissed defendant's counterclaim with prejudice. *Wright*, 157 Ill. App. 3d at 575. The appellate court affirmed the trial court's denial of Wright's request for continued annuity payments. *Wright*, 157 Ill. App. 3d at 578. The appellate court also agreed with the reasoning in *Janata* and found that the trial court correctly concluded that the statute contained no provision for recoupment of funds paid to plaintiff by the system prior to his conviction. *Wright*, 157 Ill. App. 3d at 579. However, Shields' reliance on *Wright* is also misplaced. In *Wright*, unlike the instant case, the amount of benefits already paid out to the member exceeded the amount of contributions made by him. Moreover, in *Wright*, no claim was made for a contribution refund.

The parties to this appeal cite *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 382 N.E.2d 243 (1978). However, *Kerner* is not analogous to the instant case and does not address the contribution refund issue we now address in this case. In *Kerner*, the supreme court considered whether Kerner was entitled to receive pension benefits after conviction. The supreme court decided that he was not. *Kerner*, 72 Ill. 2d at 515. Importantly, however, the supreme court in

*Kerner* considered the purpose of the felony forfeiture provision in the Pension Code and wrote that the obvious purpose of a felony forfeiture provision is "to discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled." *Kerner*, 72 Ill. 2d at 513.

■ In our view, the Board in the instant case correctly held that the statute should not be interpreted to benefit an annuitant whose pension is terminated by reason of a felony conviction over an annuitant whose benefits are terminated because of death. After considering the Pension Code, its nature, its object, and the consequences that would result from different interpretations of section 18—163 of the Pension Code (40 ILCS 5/18—163 (West 1992)), we conclude that the legislature intended to discourage malfeasance by public officials and did not intend that a judge whose pension terminates because of a felony forfeiture should be entitled under the Pension Code both to retain annuity payments already received and to receive a refund of his or her total contributions.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

McNULTY, J., concurs.

JUSTICE TULLY, dissenting:

There is no case directly addressing the issue presented, that is, whether Judge Shields is entitled to a full refund of $113,222.04 he paid into the Judges Retirement System, while a lawfully acting judge. Judge Shields retired on October 9, 1990, and received monthly pension checks until March 2, 1992, when he was convicted of felony offenses and sentenced.

Section 18—163 of the Pension Code provides:

> "None of the benefits *** shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a judge.
>
> This Section shall not *** preclude the right to a refund." 40 ILCS 5/18—163 (West 1992).

The meaning of this provision is clear: the penalty for felony conviction is simply the discontinuation of benefits. There is no indication under the language of the statute that this penalty applies retroactively to benefits paid out prior to a conviction, however, or impacts upon the right to a refund of contributions made to the system prior to convic-

tion. The case *Janata v. Police Pension Fund*, 140 Ill. App. 3d 925 (1986), supports this conclusion. There, the statute at issue mandated the discontinuation of benefits to police officers upon conviction of any felony connected to their service as officers. In all relevant aspects, the statute at issue in *Janata* is duplicative of the statute at issue in the instant case. The First District, in interpreting the statute, affirmed the circuit court's decision to uphold a full refund of contributions made by an officer convicted of a felony, without a deduction of benefits paid out prior to the officer's conviction. In reaching this conclusion the court reasoned, "[T]here is no language in the statute before us which would permit a pension board to halt payments before the conviction or recoup payments made prior to that date." *Janata*, 140 Ill. App. 3d at 927. Under this same reasoning, I believe Judge Shields is entitled to a total refund of his contributions to the system, without deduction for benefits lawfully paid to him while in retirement. Accordingly, I would affirm the decision of the circuit court.