Docket No. 94029–Agenda 12–March 2003.

DAVID J. SHIELDS, Appellant, v. THE JUDGES’

 RETIREMENT SYSTEM OF ILLINOIS 
et al.
, Appellees.

Opinion filed May 22, 2003.

JUSTICE KILBRIDE delivered the opinion of the court:

In this case, we are asked to decide whether a retired judge whose pension benefits were forfeited as a result of a felony conviction is entitled to a full refund of his contributions to the Judges’ Retirement System (System) with no deduction for benefits he received as an annuitant after his retirement. We answer that question in the affirmative.

BACKGROUND

David J. Shields began his judicial career in 1971 as a magistrate judge in the Twenty-First Judicial Circuit. In August of that year he elected to participate in the Judges’ Retirement System. He made contributions in the form of salary deductions until his retirement in November 1990. He began receiving retirement benefits of approximately $5,100 per month beginning in December 1990. Less than a week later, he was indicted by a federal grand jury on seven felony counts, including conspiracy, extortion, and making false statements of material fact to the FBI. He was tried, convicted on all seven counts, and sentenced to 37 months in prison. The conviction was affirmed on appeal. See 
United States v. Shields
, 999 F.2d 1090 (7th Cir. 1993).

Shields continued to receive his retirement benefits until the date of his conviction, March 2, 1992. The System then notified him that his benefits would be terminated effective on that date pursuant to section 18–163 of the Illinois Pension Code (Code) (40 ILCS 5/18–163 (West 1992)). He had contributed $113,222 to the System and had received $75,349 in benefits. Although section 18–163 of the Code provides that it “shall not operate to *** preclude the right to a refund,” Shields did not immediately seek a refund of his contributions, as he intended to pursue an appeal and the possibility of a pardon.

 In December 1999, however, upon notification by the System that he was entitled to a refund, he filed an application with the Board of Trustees of the Judges’ Retirement System (Board) seeking a full refund of all of his contributions together with interest at 5% per annum from the date his benefits were terminated. Relying on the informal opinion of a Special Attorney General, the Board determined that Shields was entitled to a refund of $37,873. That sum represented the excess of Shields’ contributions over the benefits already paid. Shields appealed that determination. The Board found that computation of the refund was governed by section 18–129 of the Pension Code (40 ILCS 5/18–129 (West 1992)). Subparagraphs (a) through (e) of that section deal with refunds due: (a) to a participant in the System who ceases to be a judge before benefits are payable; (b) to participants who die in office; (c) to annuitants who die without a spouse or other beneficiary; (d) to participants or annuitants whose marriages are terminated by death or dissolution; and (e) to the estate of the surviving spouse of an annuitant.

Subparagraphs (c), (d), and (e) of the section provide for a net refund only after paid benefits are subtracted from contributions. Conversely, paragraphs (a) and (b) contain no limiting language. In fact, no provision in section 18–129 of the Code relates to an annuitant whose rights to benefits are terminated by forfeiture resulting from a felony conviction. The only specific statutory reference to a refund is found in section 18–163 of the Code. Nevertheless, the Board reasoned that the statute should not be read to benefit an annuitant whose pension benefits are terminated by a felony conviction over an annuitant whose benefits are terminated by death.

 Finding that section 18–129(c) should apply, the Board denied Shields’ appeal and ordered a refund in the amount of $37,873. No interest was awarded since section 18–129(c) specifically provides that refunds should be computed “without interest.”

Shields sought administrative review, and the circuit court of Cook County set aside the decision of the Board, finding that Shields was entitled to a full refund of all of his contributions totaling $113,222.

The appellate court reversed, with one judge dissenting. 329 Ill. App. 3d 27. We granted leave to appeal (177 Ill. 2d R. 315), and we now reverse the appellate court.

ANALYSIS

There are no contested issues of fact presented by the record. Resolution of this case depends on the interpretation of the statutory provisions governing a refund of contributions where retirement annuity benefits are terminated because of a judge’s felony conviction. This is a question of law. Therefore, our review of the Board’s decision is 
de novo
. 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998). As a general rule, courts will accord deference to the interpretation of a statute by the agency charged with its administration. An agency’s interpretation is not binding, however, and will be rejected when it is erroneous. 
City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268
, 122 Ill. 2d 353, 361 (1988).

Section 18–163 of the Code provides as follows:

“Felony conviction. None of the benefits herein provided shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a judge.

This section shall not operate *** to preclude the right to a refund.

All participants entering service subsequent to July 9, 1955 are deemed to have consented to the provisions of this Section as a condition of participation.” 40 ILCS 5/18–163 (West 1992).

The section 18–163 reference to a refund is unconditional. However, since that section refers to a “refund” but does not further define that term, the Board looked to section 18–129 of the Code, dealing generally with refunds, to determine the amount of any refund due to Shields. Section 18–129(a) of the Code provides, in pertinent part:

“A participant who ceases to be a judge may, upon application to the board, receive a refund of his or her total contributions to the system including the contributions made towards the automatic increase in retirement annuity and contributions for the survivor’s annuity without interest, provided he or she is not then immediately eligible to receive a retirement annuity.” 40 ILCS 5/18–129(a) (West 1992).

Section 18–129(c) of the Code provides:

“Upon death of an annuitant, where no spouse or other beneficiaries eligible for an annuity survive, the designated beneficiary or estate shall receive a refund of the contributions made for the survivor’s annuity, without interest. If the annuitant received annuity payments in the aggregate less than his or her contributions for retirement annuity and the contributions towards the automatic increase in the retirement annuity, the designated beneficiary or estate shall also be refunded the difference between the total of such contribution, excluding interest, and the sum of annuity payments made.” 40 ILCS 5/18–129(c) (West 1992).

Neither section describes the circumstances applicable to Shields. Yet, even though Shields is alive, the Board applied section 18–129(c) because, as it reasoned in its written findings:

“To determine otherwise would mean that a member of the System who has retired and is receiving a retirement annuity and whose benefits are terminated as the result of a felony conviction would receive more in benefits than a member of the System who has received a retirement annuity for the same length of time but whose benefits are terminated by death.”

The appellate court agreed with this determination. 329 Ill. App. 3d at 34. The court reasoned that since section 18–163 of the Code did not prescribe a method for calculating the amount of any refund due, the intent of the legislature must be divined by resorting to the rules of statutory construction. The majority concluded that “the legislature intended to discourage malfeasance by public officials and did not intend that a judge whose pension terminates because of a felony forfeiture should be entitled under the Pension Code both to retain annuity payments already received and to receive a refund of his or her total contributions.” 329 Ill. App. 3d at 37.

Statutory construction requires courts to ascertain and give effect to the intent of the legislature. 
In re C.W.
, 199 Ill. 2d 198, 211 (2002). Where statutory language is clear, it must be applied as written; however, if the language is susceptible of more than one interpretation, the court may look beyond the language to consider the legislative purpose. 
Reda v. Advocate Health Care
, 199 Ill. 2d 47, 55 (2002). Legislative intent must be ascertained from a consideration of the entire act, its nature, its object, and the consequences resulting from different constructions. 
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 96 (1990). The language of pension statutes must also be liberally construed in favor of the rights of the pensioner. 
Matsuda v. Cook County Employees’ & Officers’ Annuity & Benefit Fund
, 178 Ill. 2d 360, 365-66 (1997).

No case has yet addressed the precise issue presented here. Shields argues that some guidance may be found in 
Janata v. Police Pension Fund
, 140 Ill. App. 3d 925 (1986). In that case, a police chief appealed an order of the Police Pension Fund Board allowing an officer terminated for a felony conviction arising out of his police duties to keep his pension benefits paid prior to his conviction. The chief contended that no refund of the officer’s contributions should be made until the pension board first deducted the pension payments he received after he was indicted, but before he was convicted, because the forfeiture statute mandated repayment in such a case. The statute in question was identical to the one applicable to judges in the case before us. See 40 ILCS 5/3–147 (West 2000).

The appellate court applied a plain language analysis in rejecting the police chief’s contention, holding:

“The plain meaning of the statute in question is that a member of the pension fund who is convicted of a felony shall thereafter receive no pension benefits, with only an entitlement to a refund of his contribution. The words ‘[n]one of the benefits *** shall be paid to any person who is convicted’ [citation] clearly and unambiguously focus on the person’s conviction as the time when the benefits cease. A pension board acquires only such powers as are conferred on it by the statute, and there is no language in the statute before us which would permit a pension board to halt payments before the conviction or to recoup payments made prior to that date. If the legislature, as plaintiff suggests, had intended to authorize pension boards to cut off benefits as of the date of the commission of the felony, it could have so stated.” 
Janata
, 140 Ill. App. 3d at 927.

Shields argues that the same result should obtain in his case. His benefits were, in accordance with the statute, terminated prospectively as of the date of his conviction. No language in section 18–163 of the Code authorizes a recoupment of benefits paid prior to his conviction. Therefore, since the statute provides that it shall not operate to preclude the right to a refund, he contends that he is entitled to recover all of his contributions.

Janata 
was followed in 
People ex rel. Wright v. Board of Trustees of the Teachers’ Retirement System
, 157 Ill. App. 3d 573 (1987). In that case, a teacher received pension benefits after his guilty plea to a federal felony and before the imposition of sentence. He sued to prohibit the Teacher’s Retirement System Board from terminating his pension benefits pursuant to the applicable felony forfeiture statute. The Board, in turn, counterclaimed for recoupment of the benefits paid after the guilty plea. The trial court ruled against the plaintiff on his claim and also dismissed the Board’s counterclaim. The appellate court affirmed the dismissal, rejecting the Board’s argument that since the paid benefits exceeded the plaintiff’s contributions, it was entitled to a recoupment of those benefits. Citing 
Janata 
with approval, the court held that the trial court correctly concluded that the statute contains no provision for recoupment of funds paid prior to the plaintiff’s conviction. 
Wright
, 157 Ill. App. 3d at 579.

The Board argues that the opinion in 
Janata 
does not make clear how to calculate the refund. If the refund consisted of the difference between contributions made and benefits paid, the Board concedes that the opinion is correct because no statutory authority exists to allow a recoupment of benefits from the amount already offset. The opinion does not, however, set out the amount of the refund, nor does it state whether any deductions were taken from total contributions.

The Board argues that, unlike the circumstances in 
Wright
, the benefits received by Shields did not exceed his contributions and the Board has not sought repayment of any benefits he received prior to his conviction.

The Board also refers us to 
Phelan v. Village of LaGrange Park Police Pension Fund
, 327 Ill. App. 3d 527 (2001), decided after the appellate court decision in this case. The 
Phelan 
court relies on the reasoning of the appellate court in this case. 
Phelan 
similarly held that the felony forfeiture section applicable to the Police Pension Fund should not, as a matter of public policy, be construed to favor an officer whose benefits are terminated by felony conviction over an officer whose benefits are terminated by separation or death. 
Phelan
, 327 Ill. App. 3d at 536.
 Phelan 
offers no further enlightenment on the issue.

Neither 
Janata 
nor 
Wright
 attempts to refine or limit the term “refund” as used in section 18–163 of the Code. We are not persuaded that the Board’s attempt to limit Shields’ refund is justified by resorting to the provision in the refund statute applicable to deceased annuitants. See 40 ILCS 5/18–129(c) (West 1992). The terms of section 18–129 are clear and unambiguous. This section appears to express a comprehensive legislative scheme for the computation of refunds in various situations involving system participants, annuitants and their beneficiaries or estates. No provision in section 18–129 of the Code pertains to annuitants whose benefits are subject to the felony forfeiture statute. We will not presume that the legislature intended to define rights or procedures where the statute is silent on the subject. It is the dominion of the legislature to enact laws and it is the province of the courts to construe those laws. We can neither restrict nor enlarge the meaning of an unambiguous statute. 
Petersen v. Wallach
, 198 Ill. 2d 439, 448 (2002). Thus, we conclude that section 18–129 of the Code has no application to refunds due annuitants whose benefits have been forfeited. Most importantly, we note that section 18–163 contains no limitation on the right to a refund. In other words, the right to the refund is unconditional. Accordingly, we will not impose any conditions that are not clearly required by the statutory language.

As we have noted, the Board concedes that, as held in 
Janata
 and 
Wright
, the statute does not allow recoupment of benefits paid prior to conviction. However, if the Board were permitted to deduct Shield’s benefits from his total contributions, it would, in effect, be recouping benefits rightfully paid to Shields prior to his conviction. That result would be incompatible with our determination that the right to a refund is unconditional.

Although we have held that the purpose of the felony forfeiture provision in the Code is “to discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled” (
Kerner v. State Employees’ Retirement System
, 72 Ill. 2d 507, 513 (1978)), the result we reach here does not frustrate that purpose. Shields contributed $113,222 of his own money to the pension fund. Since the forfeiture, he has been denied benefits at the rate of approximately $5,000 per month for more than 11 years. That loss, now totaling over $600,000, will continue to grow until his death and the death of his spouse. The imposition of such a penalty should have ample deterrent effect. Further, to adopt the Board’s construction would be inconsistent with our obligation to construe pension statutes liberally in favor of the pensioner. 
Matsuda
, 178 Ill. 2d at 365-66.

Therefore, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

Appellate court judgment reversed;

 circuit court judgment affirmed.

CHIEF JUSTICE McMORROW took no part in the consideration or decision of this case.