SIXTH DIVISION
May 30, 2008

No. 1-07-2721

JOHN M. FIELDS,                                             )
                                                           ) Appeal from
     Plaintiff-Appellant                            ) the Circuit Court
                                                           ) of Cook County
         v.                                    )
                                                           ) 04 CH 04436
SCHAUMBURG FIREFIGHTERS' PENSION BOARD, and Roger Turk,     )
Individually, as President of the Schaumburg Firefighters' Pension Board, ) Honorable
                                                           ) James F. Henry,
     Defendants-Appellees.                          ) Judge Presiding

     PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

     John M. Fields, a former fire captain of the Village of Schaumburg, filed an action in

March 2004 against the Schaumburg Firefighters' Pension Fund and the pension board's

president, Roger Turk, regarding a village employee's miscalculation of Fields' retirement

pension benefits by almost 43%. Fields alleged the village employee's recalculation of his

benefits in 2003 to implement an annual cost-of-living increase was a "final administrative

decision" by the board. He further alleged he could retain the recalculation because the board

was never given statutory authority to rescind a pension benefits "award" and lost any

jurisdiction it might have had by failing to pursue the issue within the 35 day period provided by

the Administrative Review Law. 735 ILCS 5/3-101 *et seq.* (West 2004); 40 ILCS 5/4-139 (West

2004). In addition to a declaratory judgment to that effect, Fields sought an injunction

preventing the board from meeting to reduce or withhold the 43% increase. Cross-motions for

summary judgment were filed and resolved in favor of the defense. Fields appeals.

     An appeal involving undisputed facts and the interpretation of statutory provisions

1-07-2701

presents a question of law we address *de novo*. *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 230, 794 N.E.2d 1055, 1057 (2003); *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 491-92, 791 N.E.2d 516, 518 (2003). The standard for reviewing the entry of summary judgment is also *de novo*. *Financial Freedom v. Kirgis*, 377 Ill. App. 3d 107, 130, 877 N.E.2d 24, 44 (2007).

The following legal principles and undisputed facts are pertinent. The composition of the Schaumburg Firefighters' Pension Fund Board is specified by statute. See 40 ILCS 5/4-121 (West 2004). Members of the board are deemed fiduciaries with respect to the pension fund or retirement system (40 ILCS 5/1-101.2 (West 2004)), and may be held personally liable for breach of any fiduciary duty established by the Illinois Pension Code. 40 ILCS 5/109, 1-114 (West 2004). The board is charged with controlling and managing the pension fund, including any investment expenditures and income and all payments to disabled and retired firefighters, their surviving spouses, and other dependents. 40 LCS 5/4-123 (West 2004). The Pension Code specifies how one becomes entitled to a disabled or retired firefighter's pension. See *e.g.*, 40 ILCS 5/4-107 (West 2004). The Pension Code also specifies how creditable service as a firefighter of a municipality is to be calculated (see 40 ILCS 5/4-108 through 4-108.5 (West 2004), and how an individual's monthly base pension is be calculated. 40 ILCS 5/4-109 (West 2004). The Pension Code further states that a monthly pension of a disabled or retired firefighter is to be increased by 3% annually. 40 ILCS 5/4-109.1 (West 2004). The language of the pension statutes is to be liberally construed in favor of the rights of the pensioner. *Shields*, 204 Ill. App. 3d at 494, 791 N.E.2d at 519.

2

1-07-2721

In December 1991, Fields began receiving nonduty disability benefits of $1,881.88 per month from the Village of Schaumburg. The monthly payments were adjusted to $2,201.67 in January 1993. In April 1997, the payments were recategorized as a retirement pension rather than a disability pension. In April 2002, Fields' $2,201.67 monthly payment was increased by 15% to $2,531.92 because Fields attained the age of 55 and five years had elapsed since he converted from disability to retirement payments.

On January 24, 2003, Keith Wendland, a village employee, sent Schaumburg pension recipients a letter indicating that due to "a recent audit" there would be "changes in the way some of the amounts are calculated for increases due at January 1, 2003," and that the annual recalculations would be delayed by one month. Wendland did not state any specific dollar amount or percentage and he did not indicate the pension board was aware of the audit or intended change in recalculation method.

In February 2003, while recalculating Fields' monthly pension payment to include the 3% annual cost-of-living adjustment he was statutorily entitled to as of January 2003, a village employee erroneously determined the 15% increase in Fields' benefits that was implemented in 2002 should have been implemented in 1992. Therefore, instead of increasing Fields' monthly disbursement to $2,607.88, the employee increased the payments nearly 43% to $3,609.92. The employee compounded the calculation error by cutting a check for $8,755.54 as a back payment for pension benefits that Fields was not actually owed. Village employee Patty Fisher sent the check to Fields with a letter stating:

"Due to the change in your status,[1] a raise in your pension amount, was overlooked. This raise was due April 2002. I have included a retro check, in the amount of $8,755.74, for the 2002 amount due to you. Your February 2003 check includes the adjustments for January & February.

In March, your pension check will reflect the correct monthly amount of $3,609.92."

This was the full extent of Fisher's letter to Fields and she gave no indication she was speaking on behalf of the board or that the board was aware of the atypical recalculation.

On July 11, 2003, Douglas Ellsworth, the village's director of finance, sent Fields an apologetic letter indicating that a recent review of pension records had disclosed "some errors made in your monthly retirement pension between January 1, 2003 and June 30, 2003." Ellsworth indicated Fields' monthly pension payment would be reduced to the amount he was entitled to, $2,607.88, effective July 2003. Ellsworth enclosed a spreadsheet and summarized that the net effect of the errors was overpayment totaling $14,768.22. He suggested that Fields not spend the recent lump-sum check because the board had an obligation to collect overpayments "received due to miscalculations," intended to address the specifics at its next meeting, and might demand immediate repayment. On July 14, 2003, Ellsworth again corresponded with Fields, indicating that the board was requesting repayment of the $8,756 lump

---

[1] This is apparently a reference to Fields' change in status from a disability pension recipient to a retirement pension recipient, which increased his entitlement by 15%.

sum within 10 days and would subsequently determine a repayment schedule for the excess $6,012 included in Fields' 2003 monthly payments.

On July 23, 2003, Fields wrote to the finance director to request more information about the recent audit and so-called change in his "status."

On October 27, 2003, an attorney representing the pension fund sent Fields a letter which reiterated the substance of the finance director's two letters. Counsel asked Fields to refund the lump-sum payment within 30 days or prepare for legal action.

On November 25, 2003, Fields' attorney refused to refund the overpayment and demanded that the monthly payments be reinstated to $3,609.92. The attorney characterized the village employee's correspondence on January 24, 2003, as a "decision" of the pension board regarding the amount of Fields' benefits, and asserted that the pension board had only 35 subsequent days in which to "alter, amend or modify" its "decision" before it lost jurisdiction.

On February 10, 2004, the board's attorney sent Fields a letter indicating the board received and discussed Fields' recent correspondence but was not persuaded by it. Furthermore, in lieu of a $14,768.22 lump-sum repayment, the board would begin in March 2004 to deduct $600 from Fields' monthly pension benefits until the overpayment was recouped.

On March 12, 2004, Fields filed the instant suit seeking declaratory and injunctive relief. Consistent with his prior correspondence, he made no mention of the village. Instead, he alleged the pension board "awarded" him a monthly pension of $3,609.92, tendered the lump sum back payment, and then lacked any common law or statutory authority to modify or withhold the amount of pension benefits it had "awarded" or granted to a retiree. He further contended that

the pension board's only avenue of relief was to appeal its "final administrative decision" pursuant to the Administrative Review Law (40 ILCS 5/4-139 (West 2002), and that such review became time-barred 35 days after the "decision" to increase his pension. We note, however, that Fields did not allege the board lacked authority to make deductions from his monthly pension benefits until he had repaid the $14,768.22 overpayment and that he sought no relief to that effect.[2]

The pension board and its president (hereinafter board) responded to Fields' complaint with an answer denying the material allegations and a motion to dismiss, to which it attached copies of some of the correspondence regarding Fields' benefits. The board did not provide the court with the initial correspondence from the village employees in January and February 2003 which Fields was characterizing as a decision of the board. After full briefing, the circuit court

---

[2] In his opening appellate brief, Fields states there is no statutory authority for the board to "order[] him to pay back past benefits" or otherwise "recover [its] overpayments [totaling $14,768.22]." In his reply brief, Fields states the defendants "do not have any law or rule empowering them to recoup [over]payments." These statements are only remarks made in passing, without supporting argument or citation to the record and legal precedent. They do not warrant a response from this court. We nonetheless reiterate that Fields' complaint did not dispute the board's authority to demand a lump-sum repayment and its announced intention to deduct $600 per month from Fields' monthly pension benefits payments until the full $14,768.22 was recouped. The board's right to recover the $14,768.22 was never put at issue in the circuit court and is not properly raised in this court of review.

denied the motion to dismiss, finding that the allegation "that the Board had awarded the increased pension at its January meeting" was not disputed by any exhibit with evidentiary value. The court suggested the issue could resolved "if the facts and circumstances surrounding the actions in January and July can be established."

The board subsequently filed a motion for summary judgment and again tendered some of the correspondence and an affidavit from the village's director of finance, Ellsworth, restating the substantive content of the correspondence. Fields countered with a cross-motion for summary judgment, to which he attached copies of the January and February correspondence he was characterizing as a pension board decision to increase his benefits. After considering the parties' briefs and oral arguments, the circuit court denied Fields' motion and granted the board's motion.

On appeal from that ruling, Fields argues an administrative agency such as the pension board has no inherent or common law powers and is empowered to act only pursuant to the authority granted by statute. He finds support for this proposition in *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773, 533 N.E.2d 927, 930 (1989), which also indicates that administrative actions which exceed the authority delegated are void actions. He contends there is no statute which expressly authorizes a firefighters' pension board to reduce the amount of payments it has awarded to a pensioner. He cites a trio of related cases, *Shields*, 204 Ill. 2d 488, 791 N.E.2d 516, *Janata v. Police Pension Fund of the Village of Hillside*, 140 Ill. App. 3d 925, 489 N.E.2d 498 (1986), and *People* ex rel. *Wright v. Board of Trustees of the Teachers' Retirement System*, 157 Ill. App. 3d 573, 510 N.E.2d 1283 (1987), as general support for the proposition that if the legislature intended to authorize a firefighters' pension board to

7

reduce his pension, the legislature would have expressly granted this power. In addition, he relies on the Pension Code (40 ILCS 5/3-148 (West 2004) for its indication that pension board decisions are subject to the Administrative Review Law (735 ILCS 5/3-101 (West 2004)), and the portion of the Administrative Review Law stating:

> "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2004).

He further argues that in accordance with the principles of statutory construction that the legislature's language is to be given its plain and ordinary meaning and enforced as written (*Janata*, 140 Ill. App. 3d at 927, 489 N.E.2d at 500), we must conclude that a local pension board has no jurisdiction after 35 days to disturb its decision to award benefits, even if the board has made a mistake. Finally, he argues that *Rossler* and *Sola* are analogous to his own case (*Rossler*, 178 Ill. App. 3d 769, 533 N.E.2d 927; *Sola*, 342 Ill. App. 3d 227, 794 N.E.2d 1055), even though they specifically concern the police pension fund, and that they demonstrate the firefighters' pension board lost jurisdiction to address the alleged calculation mistake in Fields' benefits when the board failed to address its decision in a timely fashion.

We do not accept the premise of Fields' argument that the January and February 2003 errors in calculation that resulted in overpayments to him were "an award of pension benefits" or a "final administrative decision" by the Schaumburg Firefighters' Pension Board. Fields is

relying on correspondence from village employees indicating the employees would recalculate or had recalculated his monthly pension benefits for the 2003 calendar year. Although Fields alleged and has repeatedly argued the village's letters were an "award" by the pension board, the village employees were not members of the pension board, they did not purport to speak on behalf of the pension board, and they did not suggest in any way that the board was aware of their change in calculation method or correspondence to Fields.

We find guidance in *Sola*, which analyzed whether a pension board rendered a decision within the meaning of the Administrative Review Law to award a base pension amount and subsequent 3% annual cost-of-living increases to the widow of a Roselle police officer. *Sola*, 342 Ill. App. 3d 227, 794 N.E.2d 1055. The widow filed an application in 1993 with the Village of Roselle Police Pension Board requesting benefits as a surviving spouse and sent a letter to the president of the board requesting an annual cost-of-living increase. *Sola*, 342 Ill. App. 3d at 229, 794 N.E.2d at 1056. Later, no one could locate a written decision reflecting the board's award in 1993 of a pension and 3% annual cost-of-living increases, but for the next seven years, she received the pension benefits and annual 3% increases without question. *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1058. The board's records definitively indicated it reviewed and approved an annual increase to her pension in 1996. *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1059. Even so, in late 2001, following an audit by the Illinois Department of Insurance and its advice that surviving spouses were not statutorily entitled to cost-of-living increases, the Village of Roselle notified the widow that it would not be increasing her pension benefits in 2002 beyond the 2001 level. *Sola*, 342 Ill. App. 3d at 229, 794 N.E.2d at 1056. In addition, the pension board notified

her that her entitlement to the cost-of-living increases would be addressed at an upcoming board meeting. *Sola*, 342 Ill. App. 3d at 229, 794 N.E.2d at 1057. At that point, the circuit court granted her request for declaratory and injunctive relief preventing the board from reconsidering her entitlement to the annual adjustments. *Sola*, 342 Ill. App. 3d at 229, 794 N.E.2d at 1056.

On appeal, the board and the village attempted to capitalize on the lack of a written decision from 1993, by arguing the board was not precluded from holding a hearing in 2002 because it never actually rendered an administrative decision on the widow's request for a pension and 3% annual increases. *Sola*, 342 Ill. App. 3d at 231, 794 N.E.2d at 1058. Without an administrative decision, the board argued, the Administrative Review Law and its 35-day limit, were inapplicable. *Sola*, 342 Ill. App. 3d at 231, 794 N.E.2d at 1058. To resolve this argument, the appellate court first looked to the definitions section of the Administrative Review Law, which indicated an " '[a]dministrative decision' " or " 'decision ' " for purposes of the Act is " '[a]ny decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency.' " *Sola*, 342 Ill. App. 3d at 231-32, 94 N.E2.d at 1058, quoting 735 ILCS 5/3-101 (West 2002). The court also relied on precedent indicating:

> " ' "A final and binding decision by an administrative agency
> requires, at the very least, that the agency has taken some definitive
> action with regard to the application before it and that the applicant
> has been informed of the action." ' " (Emphasis omitted.) *Sola*,
> 342 Ill. App. 3d at 232, 794 N.E.2d at 1058, quoting *Key Outdoor*,

> *Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 324,
>
> 750 N.E.2d 709 (2001), quoting *Illinois Wood Energy Partners,*
>
> *L.P. v. County of Cook*, 281 Ill. App. 3d 841, 851, 667 N.E.2d 477
>
> (1995).

The court indicated the "application" criterion was satisfied by the widow's 1993 pension application and contemporaneous letter to the board president requesting cost-of-living increases. *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1058.

The "definitive action with regard to the application before [the board] and that the applicant has been informed of the action" was shown by a combination of (1) the widow's subsequent receipt of pension benefits and annual cost-of-living increases, (2) the board's 1996 approval of an annual increase in her pension, (3) the 2000 audit record stating the widow " 'was granted a pension of $1596.59, effective May 10, 1993' " and that " 'annual increases have been granted since 1993,' " and (4) the board's 2001 letter stating " 'in 1993 the Pension Board awarded [the widow] a 3% cost of living increase.' " *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1059.

Thus, *Sola* indicates for purposes of the Administrative Review Law, we should be looking for communication between the person seeking benefits and the pension board. The case also tells us that even when we lack the board's specific response to the benefits applicant, we may deduce the board's action from its subsequent communication to the applicant. Nevertheless, at oral arguments, Fields cited *Sola* for the proposition that a pension payment alone is evidence of a pension board's decision to award a certain amount of benefits. *Sola*, 342

11

1-07-2721

Ill. App. 3d 227, 794 N.E.2d 1055. This interpretation of the case is incorrect, as it disregards the appellate court's reliance on not only payments to the police officer's widow, but also numerous communications from the board regarding its decision to award her annual cost-of-living increases. See *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1059. It also completely disregards the application prong of a final administrative decision. *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1058.

The cases *Sola* relied on, such as *Key Outdoor*, 322 Ill. App. 3d 316, 750 N.E.2d 709, further illustrate the components of a final administrative decision for purposes of the statute. *Key Outdoor* concerned access to commercial property near the corner of 44th Street and U.S. Route 36 in Decatur, Illinois, which, while not land-locked, was accessible only from a residential dead-end street. *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1058; *Key Outdoor*, 322 Ill. App. 3d at 318-19, 750 N.E.2d at 711. In 1999, the 1.2-acre lot was vacant except for the property owner's outdoor advertising sign. *Key Outdoor*, 322 Ill. App. 3d at 319, 750 N.E.2d at 711-12. The owner contracted to sell the lot to a commercial car wash business, contingent upon the receipt of a commercial driveway permit onto 44th Street, and then wrote a letter to the Illinois Department of Transportation to request the permit. *Key Outdoor*, 322 Ill. App. 3d at 318-19, 750 N.E.2d at 711-12. The Department responded with a letter denying the permit request, and when the owner asked for a written explanation, the Department responded with a letter which included its reasoning for the denial. *Key Outdoor*, 322 Ill. App. 3d at 319-20, 750 N.E.2d at 712. The owner wrote back asking for an explanation as to why the Department would not grant a variance, and when a response was not forthcoming, he filed a complaint for

12

administrative review in the circuit court, arguing for the first time that the Administrative Review Law and the Administrative Procedure Act entitled him to a formal hearing on his commercial driveway application. *Key Outdoor*, 322 Ill. App. 3d at 320, 750 N.E.2d at 712; 735 ILCS 5/3-101 through 3-113 (West 1998); 5 ILCS 100/1-1 through 15-10 (West 1998). The appellate court acknowledged that a final administrative decision "*usually* follows [from] some sort of adversarial process involving the parties affected, a hearing on the controverted facts, and an ultimate disposition rendered by an impartial fact finder." (Emphasis in original.) *Key Outdoor*, 322 Ill. App. 3d at 324, 750 N.E.2d at 716. It determined, however, that so long as " 'the agency has taken some definitive action with regard to the application before it and \*\*\* the applicant has been informed of the action,' " a hearing is not required. *Key Outdoor*, 322 Ill. App. 3d at 324, 750 N.E.2d at 716, quoting *Illinois Wood Energy Partners*, 281 Ill App. 3d at 851, 667 N.E.2d 477. Citing the owner's written request for a commercial driveway permit and the agency's responsive letters stating its decision and its reasoning, the court concluded there had been a final administrative decision within the meaning of the Administrative Review Law. *Key Outdoor*, 322 Ill. App. 3d at 324, 750 N.E.2d at 716.

*Sola* also relied on *Illinois Wood Energy Partners*, 281 Ill. App. 3d 841, 667 N.E.2d 477, a case which emphasizes the need for direct interaction between an applicant and an administrative agency, instead of some other, affiliated person, before there can be a decision subject to the parameters of the Administrative Review Law. *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 808. The case centered on the fact that the Cook County zoning administrator had the authority to issue certificates confirming the zoning classification of specific land parcels.

*Illinois Wood Energy Partners*, 342 Ill. App. 3d at 848, 667 N.E.2d at 481. In the event the administrator's determination was adverse, a party could appeal the administrator's ruling to the Cook County Zoning Board of Appeals, which would in turn conduct a public hearing on the proper zoning classification and issue a decision subject to the Administrative Review Law. *Illinois Wood Energy Partners*, 342 Ill. App. 3d at 848, 667 N.E.2d at 481. A developer wanted a zoning certificate indicating that a proposed facility in Sauk Village, Illinois, would qualify as a wood-burning power plant, which was a permitted use, instead of a solid waste incinerator, which would require a special use permit. *Illinois Wood Energy Partners*, 281 Ill. App. 3d at 844, 667 N.E.2d at 479. The developer sent a letter to the zoning administrator requesting the zoning certificate and also stating, " 'We would welcome the opportunity to present the merits of our [interpretation of the zoning ordinance] to the Cook County Zoning Board of Appeals which is charged with the responsibility for interpreting the Cook County Zoning Ordinance.' " *Illinois Wood Energy Partners*, 281 Ill. App. 3d at 844, 667 N.E.2d at 479. The zoning administrator wrote to the board, outlining the developer's request for a favorable zoning certificate and willingness to address the board on this subject, and the matter was then considered by the zoning board at two executive sessions. *Illinois Wood Energy Partners*, 281 Ill. App. 3d at 844-45, 667 N.E.2d at 479. Following these executive sessions, the board sent a letter to the zoning administrator regarding *her* request that the board consider how the ordinance applied to the developer's proposed facility. *Illinois Wood Energy Partners*, 281 Ill. App. 3d at 845, 667 N.E.2d at 479-80. Although the board's letter was addressed only to the zoning administrator, the developer somehow obtained a copy, and based on the board's conclusion that the proposed

14

facility was a power plant and not an incinerator, the developer began the process of obtaining federal, state, and local regulatory authorization for the project. *Illinois Wood Energy*, 281 Ill. App. 3d at 845, 667 N.E.2d at 480. The zoning administrator never responded to the developer's request for a zoning certificate. *Illinois Wood Energy Partners*, 281 Ill. App. 3d at 848, 667 N.E.2d at 482. When Sauk Village opposed construction of the facility and refused to allow the developer to grade the property without a special use certificate for an incinerator, the developer filed a complaint for a writ of *mandamus* to compel issuance of a grading permit, and then characterized the zoning board's letter as a final and binding administrative decision in the developer's favor. *Illinois Wood Energy*, 281 Ill. App. 3d at 846-47, 667 N.E.2d at 480-81. While the circuit court found this persuasive, the appellate court did not, and found the letter amounted to nothing more than an internal communication expressing an advisory opinion to the administrator about the developer's request to the administrator for a zoning certificate. *Illinois Wood Energy Partners*, 281 Ill. App. 3d at 851, 667 N.E.2d at 483. As such, the board's letter did not fit within the established definition of a final administrative decision, which "requires, at the very least, that the [board] has taken some definitive action with regard to the application before it and that the applicant has been informed of the action." *Illinois Wood Energy Partners*, 281 Ill. App. 3d at 851, 667 N.E.2d at 483.

Applying this criterion to the present case, we conclude the record shows that in the 1990's, Fields applied to the pension board for a base pension and 3% annual cost-of-living increases. Although we lack a copy of Fields' original application and the board's response, like the court in *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1058-59, we can deduce these facts from

Fields' undisputed receipt of benefits and the letter written to Fields by the board's attorney on October 27, 2003, indicating Fields' pension benefits had been overpaid between February 2003 and June 2003 due to a recalculation dating back as far as 1992. Thus, we can deduce Fields applied for a base pension and 3% annual cost-of-living increases and that the board granted his application. There is no indication Fields challenged the pension board decision within the 35-day period (see 735 ILCS 5/3-103 (West 2004)), and Fields has not cited any subsequent application to the board to increase his benefits by nearly 43% in early 2003, instead of the usual 3%. In fact, Fields has never contended that he is statutorily entitled to an award of the much higher amount he received for a few months in 2003. He is arguing that merely because the village notified him it was recalculating his monthly payment (pursuant to the board's existing pension award) and then notified him the village had recalculated his monthly payment, he became entitled to the recalculated amount. We find, however, that there was no pension benefits "application" which could be considered by the defendant board in 2003 and result in an administrative decision subject to the Administrative Review Law which increased Fields' monthly entitlement to $3,609.92. 735 ILCS 5/3-101 (West 2004). See *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1058 (discussing need for surviving spouse to submit "application" to the Roselle Police Pension Board before it could be said board awarded a cost-of-living increase).

Furthermore, Fields fails to cite any minutes of Schaumburg Firefighters' Pension Board, other records of the board, or correspondence to him reflecting that the board considered and agreed his benefits should increase by 43% in just one year, and then informed him of its decision. Although an adversarial hearing is not essential, definitive action by the board and

16

communication of that decision is indispensable. *Key Outdoor*, 322 Ill. App. 3d at 324, 750 N.E.2d at 716 (a final administrative decision usually follows from some adversarial process involving the parties affected, a hearing on controverted facts, and an ultimate disposition rendered by an impartial fact finder, but a hearing is not required provided the agency has taken definitive action with regard to an application before it and the applicant has been informed of the action). Fields does not argue the board even had prior knowledge of the village employees' effort in 2003 to supposedly "correct [the] monthly amount of [his benefits to] $3,609.92." The record indicates the board learned of the increase after the fact, in June 2003, when the village informed the board of the village's miscalculation and overpayment of benefits. The correspondence from the village to Fields in January and February 2003 indicating the village would recalculate his benefits and had recalculated his benefits is not a substitute for a legally binding determination by the board which was communicated to Fields. The unsolicited correspondence from the village is not indicative of "definitive action by the board with regard to an application before the board" and it cannot be construed as an effort to inform an applicant of the action. See *Sola*, 342 Ill. App. 3d at 232, 794 N.E.2d at 1058 (discussing need for Roselle Police Pension Board to take definitive action with respect to application and to inform applicant of results).

Thus, in the absence of an application and proceedings of some sort before the pension board in 2003, which resulted in a benefits determination which was communicated to Fields, we find there was no "decision" or "administrative decision" by the board within the meaning of the Administrative Review Law to increase Fields' pension benefits by nearly 43% in 2003. The

record does not substantiate that the board -- the only entity with statutory authority to render pension decisions -- considered and decided in 2003 to dramatically increase Fields' monthly check. The only decision within the meaning of the Administrative Review Law that we are aware of was the one awarding Fields a base pension and 3% annual cost-of-living increases, and that decision of the Schaumburg Firefighters' Pension Board was not appealed within 35 days and could not be revisited by the board in 2003. The village employees' errors in 2003 in implementing the existing decision of the board do not amount to a new award of benefits by the board entitling Fields to at least $3,609.92 per month.

For these reasons, we reject the premise of Fields' appeal. His allegations and arguments regarding the board's failure to subsequently comply with the Administrative Review Law fall by the wayside. 735 ILCS 5/3-103 (West 2002). In the absence of a "decision" subject to the statute, the statute is not controlling.

Furthermore, his reliance on *Rossler* and *Sola* is unavailing, as neither case is analogous to his own. *Rossler*, 178 Ill. App. 3d 769, 533 N.E.2d 927; *Sola*, 342 Ill. App. 3d 227, 794 N.E.2d 1055. Again, the record indicates Fields applied to and was granted a base pension and 3% annual cost-of-living increases by the board in the 1990's, and in 2003, without further input to or from the board, village employees erred in implementing this decision. In contrast, in both *Sola* and *Rossler*, pension boards considered and granted benefit applications but then attempted to review the substance of their decisions after the 35-day limit provided by statute. *Rossler*, 178 Ill. App. 3d 769, 533 N.E.2d 927; *Sola*, 342 Ill. App. 3d 227, 794 N.E.2d 1055. As discussed above, *Sola* involved the Roselle Police Pension Board's attempt to redetermine whether a police

officer's widow was statutorily entitled to 3% annual adjustments, after she had been receiving the adjustments for nearly a decade. *Sola*, 342 Ill. App. 3d 227, 794 N.E.2d 1055. Similarly, in *Rossler*, the Morton Grove Police Pension Board attempted to redetermine whether a retiree had accumulated sufficient time toward a 20-year pension, after (1) the board approved his request for a five-month leave of absence from the force to act as a security consultant for the 1984 Olympic Games in Los Angeles, (2) the board agreed the five months would be counted as creditable time toward his Morton Grove pension, (3) the board notified the deputy police chief, upon his return to the local payroll, that he had accumulated 20 years and 7 days of creditable service toward retirement, and (4) the deputy police chief retired and moved to a different part of the country. *Rossler*, 178 Ill. App. 3d 769, 533 N.E.2d 927. In addition to finding that the board had no authority to reconsider the deputy police chief's entitlement to a 20-year pension (*Rossler*, 178 Ill. App. 3d at 776, 533 N.E.2d at 932), the court indicated that pension recipients should be able to rely on the judgment of the pension board as to their entitlement to benefits (*Rossler*, 178 Ill. App. 3d at 775, 533 N.E.2d at 931), and that even if the board had jurisdiction to reopen the matter, it would be equitably estopped from doing so after the officer had retired and relocated in reliance on the board's decision. *Rossler*, 178 Ill. App. 3d at 775, 533 N.E.2d at 931. In contrast to *Sola* and *Rossler*, however, the Schaumburg Firefighters' Pension Board did not attempt to revisit the substantive question of whether Fields was entitled to a retirement pension. Fields' right to pension benefits was never in jeopardy, nor was there any uncertainty about his right to a 3% cost-of-living increase. It was only years after Fields was awarded a pension that an error was made during the routine calculation of a cost-of-living increase due in 2003. Moreover,

19

although Fields contended at appellate arguments that *Rossler*'s equitable estoppel principles are pertinent here, they are not. See *Rossler*, 178 Ill. App. 3d at 775, 533 N.E.2d at 931. Fields received overpayments in February, March, April, May, and June 2003, rather than for several years like Deputy Chief Rossler. Also, he never alleged or previously contended that he took any action, such as Deputy Chief Rossler's retirement and relocation to another state, in reasonable reliance on the 43% increase and that he would suffer substantial loss unless the increased amount was maintained. See *Rossler*, 178 Ill. App. 3d at 775, 533 N.E.2d at 931 (stating and applying the principles of equitable estoppel doctrine). There is no apparent factual basis for an equitable estoppel finding and raising the principle for the first time on appeal is ineffective.

We also reject Fields' contention that *Shields*, 204 Ill. 2d 488, 791 N.E.2d 516, *Janata*, 140 Ill. App. 3d 925, 489 N.E.2d 498, and *Wright*, 157 Ill. App. 3d 573, 510 N.E.2d 1283, justify a reversal. These cases concern the proper interpretation of statutes which have no bearing on Fields' benefits. Each case involved a pension recipient who was subsequently convicted of a felony, which triggered a statute terminating their entitlement to a public servant's pension and also severing any connection between the pension system and the pensioner by refunding all of the pensioner's salary contributions. See *Shields*, 204 Ill. 2d 488, 791 N.E.2d 516 (indicating the newly convicted felon, a retired judge, was entitled to a full refund of his salary contributions and that the retirement board could not first deduct the amount of pension benefits paid prior to his conviction); *Janata*, 140 Ill. App. 3d 925, 489 N.E.2d 498 (finding police officer's entitlement to disability pension benefits did not terminate on date he committed felony; statute required an actual felony conviction and did not allow for earlier termination of benefits or recoupment of

20

benefits paid prior to conviction); *Wright*, 157 Ill. App. 3d 573, 510 N.E.2d 1283 (holding that statute specific to public school teachers who are "convicted of any felony related to or arising out of or in connection with his or her service as a teacher" was not triggered when public servant pled guilty to a felony; formal judgment of conviction and sentence were necessary before he was "not entitled to receive benefits from the [pension] system"). These cases might be pertinent if Fields was convicted of a felony and purged from the firefighters' pension system. But plainly, such statutes have no application to his ongoing pension payments from the pension fund nor do they suggest he is entitled to the miscalculation of a routine cost-of-living adjustment.

Having determined there was no new benefits award in 2003 subject to the Administrative Review Law (735 ILCS 5/3-303 (West 2004); 40 ILCS 5/3-148 (West 2004)), we now turn to the specific question of whether the circuit court properly granted the defense motion for summary judgment on Fields' complaint.

Fields contends this appeal is the review of an administrative decision, which it is not, and cites *Lindsey v. Board of Education of the City of Chicago*, 354 Ill. App. 3d 971, 978, 819 N.E.2d 1161, 1167 (2004), for the proposition that in an administrative review we are limited to reviewing the decision of the agency, rather than the circuit court. If Fields were correct, we would be unable to consider the affidavit attached to the defendants' motion for summary judgment, as this affidavit was created on August 28, 2006, for presentation to the trial judge. We have already determined there is no administrative decision to review and now also point out that Fields' complaint did not seek administrative review. In his pleading Fields sought declaratory and injunctive relief against the board to prevent it from "conducting a hearing"

regarding the overpayment of benefits, because, according to Fields, a decision was rendered and became unassailable with the passage of time. Therefore, we are not prevented from considering the affidavit.

The purpose of a summary judgment proceeding is not to try a question of fact, but to determine whether one exists. *In re Estate of Allen*, 365 Ill. App. 3d 378, 385, 848 N.E.2d 202, 210 (2006). The circuit court's task is to determine whether the complaint and answer, and any deposition transcripts, admissions, and affidavits on file, construed in the light most favorable to the opponent, reveal a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Financial Freedom*, 377 Ill. App. 3d at 130, 877 N.E.2d at 44. Even though the order on appeal does not disclose the court's specific reasoning for resolving the cross-motions for summary judgment in favor of the board, and we were not given a transcript of the hearing from which we might discern the court's reasoning, we proceed without hesitation because the entry of summary judgment is to be reviewed on a *de novo* basis. *Financial Freedom*, 377 Ill. App. 3d at 130, 877 N.E.2d at 44. The entry of summary judgment "has been called a 'drastic measure,' [but] it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which ' "the right of the moving party is clear and free from doubt." ' " *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 94, 865 N.E.2d 228, 233 (2007), quoting *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314 (2001), quoting *Purtill v. Hess*, 11 Ill. 2d 229, 240, 489 N.E.2d 867 (1986). If the party moving for summary judgment supplies facts which, if not contradicted, would entitle the party to judgment as a matter of law, the opposing party cannot rely on his pleading alone to create a genuine issue of

material fact. *Financial Freedom*, 377 Ill. App. 3d at 130-31, 877 N.E.2d at 44. To resist a motion for summary judgment, the opponent must provide some factual basis that would arguably entitle him to judgment. *Financial Freedom*, 377 Ill. App. 3d at 131, 877 N.E.2d at 44. Furthermore, a court must accept an affidavit as true if it is uncontradicted by counteraffidavit or other evidentiary material. *Financial Freedom*, 377 Ill. App. 3d at 134, 877 N.E.2d at 46-47.

In the affidavit at issue, Douglas Ellsworth, the village's director of finance, set out the following facts: (1) Fields was entitled to only a 3% increase in January 2003, which would increase his monthly retirement payment of $2,531.92 to $2,607.88; (2) due to the erroneous belief that the increase should have dated to 1992, Fields' monthly payments in early 2003 were increased to $3,609.92 and he was given a retroactive check for $8,755.00; (3) the sum of the village's erroneous disbursements to Fields in 2003 was $14,768.28; and (4) the subsequent downward adjustment in his pension payments was "solely due to the discovery of the errors which had been made in the calculation of benefits, which errors were discovered upon a review of the pension records by the Village of Schaumburg." Fields did not contradict these facts by way of an affidavit or other evidentiary matter, and, therefore, these facts were admitted.

The facts disclosed by the correspondence to Fields and Ellsworth's affidavit undermine Fields' allegations that "the Board *** awarded Plaintiff a monthly pension of $3,609.92 and check of $8,755.00," that the board and its president were "without legal authority and acting contrary to law and public policy of State of Illinois [by seeking to] modify pension benefits [the board] previously granted" and the board had "no statutory or common authority to rescind/modify or withhold pension benefits it previously granted to Plaintiff." These statements

23

are incorrect and Fields was not entitled to the judicial declarations he sought. The record also undermines Fields' claim for the entry of a preliminary and permanent injunction to prevent the board from "conducting a hearing to rescind/modify or withhold the pension benefits awarded to Plaintiff on January 24, 2003." A party seeking preliminary injunction must plead facts which "clearly establish a right to injunctive relief." *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 143 Ill. App. 3d 285, 291, 492 N.E.2d 969, 974 (1986). Allegations consisting of "mere opinion, conclusion or belief are not sufficient to support issuance of a writ." *Village of Lake in the Hills*, 143 Ill. App. 3d at 291, 492 N.E.2d at 974. "A party requesting a preliminary injunction must show: (1) that he possesses a clearly ascertainable right or interest which needs protection; (2) that he will suffer irreparable injury without protection; (3) that there is no adequate remedy at law; (4) that there is a substantial likelihood of success on the merits; and (5) that in the absence of preliminary relief, he will suffer greater harm without the injunction than defendant will suffer if it is issued." *Village of Lake in the Hills*, 143 Ill. App. 3d at 291, 492 N.E.2d at 974. Fields failed to meet even the first of these five necessary elements. He failed to plead facts showing that he possessed "a clearly ascertainable right or interest" in the village's overpayment of pension benefits. *Village of Lake in the Hills*, 143 Ill. App. 3d at 291, 492 N.E.2d at 974. Moreover, he failed to subsequently provide any facts during the summary judgment proceedings which would arguably entitle him to injunctive relief. See *Financial Freedom*, 377 Ill. App. 3d at 131, 877 N.E.2d at 44 (to resist a motion for summary judgment, the opponent must provide some factual basis that would arguably entitle him to judgment). Because Fields was not entitled to declaratory or injunctive relief, the circuit court's denial of

1-07-2721

Fields' motion for summary judgment and granting of the board's cross-motion for summary judgment was proper. Accordingly, we affirm the judgment order of the circuit court of Cook County.

Affirmed.

J. GORDON and O'MALLEY, JJ., concur.