# Illinois Official Reports

## Appellate Court

---

**Robbins v. County Employees' & Officers' Annuity & Benefit Fund,**
**2021 IL App (1st) 192142**

---

| | |
|---|---|
| Appellate Court Caption | LESLIE ROBBINS, Plaintiff-Appellant, v. THE COUNTY EMPLOYEES' AND OFFICERS' ANNUITY AND BENEFIT FUND OF COOK COUNTY; THE RETIREMENT BOARD OF THE COUNTY EMPLOYEES' AND OFFICERS' ANNUITY AND BENEFIT FUND OF COOK COUNTY; LAWRENCE L. WILSON, in His Official Capacity as President of the Board of County Employees' and Officers' Annuity and Benefit Fund of Cook County; THE FOREST PRESERVE DISTRICT EMPLOYEES' ANNUITY AND BENEFIT FUND OF COOK COUNTY; THE RETIREMENT BOARD OF FOREST PRESERVE DISTRICT EMPLOYEES' ANNUITY AND BENEFIT FUND OF COOK COUNTY; and REGINA TUCZAK, in Her Official Capacity as Director of the Forest Preserve District Employees' Annuity and Benefit Fund of Cook County, Defendants (The Retirement Board of Cook County Employees' and Officers' Annuity and Benefit Fund of Cook County, Defendant-Appellant). |
| District & No. | First District, Third Division<br>No. 1-19-2142 |
| Filed | June 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-16164; the Hon. Eve M. Reilly, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Luke P. Hajzl, of Rolling Meadows, for appellant. |
| | Mary Patricia Burns, Vincent D. Pinelli, and Sarah A. Boeckman, of Burke Burns & Pinelli, Ltd., of Chicago, for appellees. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion. Presiding Justice Howse and Justice McBride concurred in the judgment and opinion. |

## OPINION

¶ 1        Cook County employee pensions are governed by article 9 of the Pension Code (40 ILCS 5/art. IX (West 2014)). Article 9, like the rest of the Pension Code, is full of contingencies and qualifications and exceptions and exceptions to exceptions and different rules for different years, using old-fashioned language and murky terms and undefined phrases, often providing for multiple different scenarios (each with exceptions and qualifications to those exceptions) in lengthy single sentences far longer than this one. And often within a series of unnumbered paragraphs, frustrating any attempt to coherently cite them. We know who wrote it—the General Assembly—but we do not know for whom it was written. Not lawyers, and certainly not laypeople. To say that these statutes need a plain-language rewrite is the height of understatement. Laws serve little purpose when the only people who can understand them are technicians and bureaucrats—or judges, only after returning to the appellate lawyers repeatedly for additional guidance and clarification, as we did here. (And we thank counsel for each party for their exceptional work.)

¶ 2        This case is, in part, about the monthly annuities a Cook County employee receives upon retirement. (The Pension Code does not call them "pensions"—it calls them "annuities.")

¶ 3        But more specifically, this case is about the automatic annual adjustments to which Cook County pensioners are entitled—usually known as cost-of-living adjustments, or COLAs, a term the parties use, and thus so will we. (The Pension Code does not.)

¶ 4        Generally speaking, retired county employees drawing annuities will become eligible for a COLA bump to their annuity at some point after turning 60. Precisely when that first COLA is added to an annuity depends on the class of employee.

¶ 5        One subset of county employees—those who retire before age 60 *and* who are drawing their annuity before age 60—receive their first COLA earlier in the process than others. Plaintiff Leslie Robbins says she belongs to that subset of employees and was thus entitled to the "earlier" COLA. The County Employees and Officers' Annuity and Benefit Fund of Cook County (Fund) disagreed. After an administrative hearing, the defendant retirement board (Board) of the Fund agreed with the Fund. The circuit court, on administrative review, likewise

sided with the Board. We do as well. We affirm the judgment below.

¶ 6                                    BACKGROUND

¶ 7          Robbins worked for the Office of the Cook County Public Guardian for 26 years. In April 2014, Robbins submitted an "Application for Retirement Annuity (Pension)" to the Fund. The application listed her projected retirement date as May 16, 2014. That retirement date was four days before Robbins's sixtieth birthday. The timing was intentional. According to Robbins, sometime in 2011, she spoke to an unnamed representative of the Fund, who advised Robbins that, if she retired just before she turned 60, she would receive her first COLA the following January (meaning January 1, 2015). If Robbins waited to retire until after she turned 60, the representative advised, Robbins would be ineligible for a COLA until January 1, 2016.

¶ 8          The Fund acknowledged receipt of plaintiff's application for annuity benefits on April 25, 2014, roughly a month before her pegged retirement date. And then Robbins retired, as promised, on May 16, 2014 (the Friday before her sixtieth birthday the following Monday).

¶ 9          By law, the first annuity check is supposed to arrive the first of the following month—June 1, 2014, in this case. See 40 ILCS 5/9-119 (West 2012). But apparently it is common for a brief lag in processing, and the annuitant is later reimbursed retroactively for the delay. That happened here, as well. On July 10, 2014, the Fund wrote Robbins that it had approved her annuity application, told her the monthly amount, and advised her that her benefits would begin retroactively to the first of June.

¶ 10         The Fund also advised her that her first COLA would be in January 2016. Robbins had expected her first COLA in January *2015*, so she sought an administrative hearing before the Board.

¶ 11         The hearing officer initially ruled in favor of Robbins based on an inapplicable annuity formula—that is, one Robbins had not chosen. The Fund sought reconsideration of that ruling, citing the applicable statutory formula that Robbins had chosen and arguing that, using the right formula, the Fund's interpretation of state law was correct, not Robbins's. The hearing officer agreed with the Fund, reversed his ruling, and ruled in the Fund's favor. The Board ultimately upheld the hearing officer's (revised) recommended ruling.

¶ 12         Robbins sought administrative review. The circuit court agreed with the Board's decision that Robbins was not entitled to a COLA until January 2016. This appeal followed.

¶ 13                                    ANALYSIS
¶ 14                                        I
¶ 15         Our review is *de novo*, as we are construing statutes, and the material facts are undisputed. *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 491-92 (2003); *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 210 (2008). We ordinarily defer to the interpretation given by an administrative agency to the law it routinely administers. *Shields*, 204 Ill. 2d at 492. Yet we are also told that pension statutes should be construed liberally in favor of the pensioner. *Id.* at 494. If those sound like contradictory maxims, we read them as follows: we will place weight on the interpretation given to us by the Board, but we will ultimately make our own judgment, and if the statute is unclear, we will liberally construe it in favor of the pensioner.

¶ 16    The question here is not the calculation of plaintiff's initial annuity but simply when she was supposed to receive her first COLA. But as we will see, before we can discuss how COLAs are calculated, it is important to understand first how the annuities, themselves, are calculated.

¶ 17    So we start with some basics of annuity calculations under article 9 of the Pension Code, which governs Cook County employees. See generally 40 ILCS 5/9-101 *et seq.* (West 2012). But we tread with caution, for as we noted at the outset, it is hazardous to speak too generally about these laws—there are too many different contingencies and scenarios and exceptions, and so many employees with such varying lengths of service and retirement ages.

¶ 18    Instead, we will stick to county employees like Robbins, with more than 20 years of service but less than 30, who retired before the age of 60 (albeit, in her case, only 4 days before). Our discussion is expressly limited to that category of employees.

¶ 19    There are at least two different ways that article 9 calculates an annuity for such an employee. (There may be more; the parties have only discussed two.) One of them is found in section 9-127, sometimes referred to as the "money purchase" option. See *id.* § 9-127. The other is the "minimum annuity" formula governed by section 9-134. See *id.* § 9-134. Robbins chose the "minimum annuity" plan in section 9-134, because it yielded her the higher annuity by far, so we start with that one.

¶ 20    Some county employees with 20-plus years of service may still be in their forties or fifties (perhaps even their late thirties) when they retire. They have the option, under section 9-134, of drawing their annuity upon retirement, at least once they reach 50 years of age. *Id.* But if they opt to draw their annuity before the age of 60, their monthly annuity (which is set in stone for life, other than COLAs) will be lower than what it would be if they waited until age 60 to draw—what is known as an "age reduction." The earlier they start receiving their annuity, the greater the age reduction and the lower the monthly annuity for the rest of their lives. Conversely, the closer to age 60 they start drawing, the higher their annuity. *Id.* If they wait until age 60, there is no age reduction; they get their full annuity. *Id.*

¶ 21    So the key under section 9-134(a) is obviously not the employee's age when she retires but her age when she chooses to start drawing her annuity, which could be years later. That is clear from the language of section 9-134(a):

> "An employee who withdraws *** with 20 or more years of service and before age 60, is entitled to annuity as computed above, to begin not earlier than age 50 if under such age at withdrawal, reduced 1/2 of 1% for each full month or fractional part thereof that *his attained age when annuity is to begin* is less than 60 ***." (Emphasis added.) *Id.* § 9-134(a).

¶ 22    The calculation of an age reduction is pegged to the employee's age on the date the "annuity is to begin" (*id.*), and to the extent that the annuity begins before the employee reaches age 60, she receives an age reduction of one-half of 1% for each month that she is short of age 60. *Id.* For example, if a retired 59-year-old employee's annuity is to begin on March 1 and her sixtieth birthday is in mid-May of that year, she is 2½ months short of age 60 when her annuity is to begin—so she receives three half-percent reductions, two for the full months of March and April and one for the fractional part of May. *Id.* Her total age reduction is 1.5%.

¶ 23    Contrast the language of section 9-134(a) above with the language of another option available to Robbins that she chose not to use—section 9-127, the "money purchase" formula.

Section 9-127 calculates the annuity based on the employee's age and contributions into the pension system. In relevant part, that section reads as follows:

> "An employee who *** attains age 50 in the service and withdraws before age 60 with at least 10 years of creditable service, shall be entitled to annuity, from the *date of withdrawal*, as follows:
>
>> (1) Present employee and future entrant with 20 or more years of service—Age and service annuity provided from the total sum accumulated to his credit from employee contributions and county contributions for such annuity, and, for a present employee, prior service annuity from the total sum accumulated to his credit for such annuity.
>>
>> (2) [A second category not applicable to Robbins.]
>
> *Any such annuity shall be computed as of the employee's age on the date of withdrawal.*" (Emphases added.) *Id.* § 9-127.

¶ 24    Note the contrast. While section 9-134(a) pegs the calculation of an annuity to the employee's age on the date "when [the] annuity is to begin" (*id.* § 9-134(a)), section 9-127 pegs the calculation of the annuity to "the employee's age on the date of withdrawal." *Id.* § 9-127. "Withdrawal" is a synonym for retirement. See *id.* § 9-116 ("withdrawal" or "withdraws from service" means "[d]ischarge or resignation of an employee").

¶ 25    Clearly, then, the calculation of the annuity itself depends on the option the employee chooses. In this case, Robbins chose section 9-134(a), which bases the annuity on the retiree's age "when [the] annuity is to begin" (*id.* § 9-134(a)), not section 9-127, which is concerned with the retired employee's age on the date she retires. *Id.* § 9-127.

¶ 26    When was Robbins's annuity to begin? Section 9-134 does not tell us, but section 9-119 does. That section, entitled "Annuity," provides in relevant part:

> "The first payment shall be due and payable *1 month after the occurrence of the event upon which payment of the annuity depends* ***; provided, that *** payments shall be made as of the first day of each calendar month during the annuity payment period, the first payment to be made as of the first day of the calendar month coincidental with or next following the first day of the annuity payment period ***." (Emphasis added.) *Id.* § 9-119.

¶ 27    The parties agree, and so do we, that at least as far as annuitants using the section 9-134 annuity formula are concerned, the "event upon which payment of the annuity depends" (*id.*) is when the employee has done the latter of two things required for an annuity: retiring and applying for the annuity. (You cannot have an annuity unless you withdraw from service, and you do not get an annuity unless you ask for one.) Here, Robbins applied for the annuity before retirement in April 2014, and then she retired on May 16, 2014. The latter of those two dates, May 16, was thus the "event upon which payment of the annuity depend[ed]" (*id.*) in her case. Which means that, under section 9-119, her first annuity payment was due at the beginning of the following month—June 2014. And indeed, when the Board approved the annuity in July, it granted the annuity effective June 1, 2014.

¶ 28    Simply put, Robbins chose section 9-134(a) to calculate her annuity. That section calculates her annuity not based on her age at retirement but on her "attained age when [the] annuity is to begin." *Id.* § 9-134(a). And the annuity was to begin in June 2014. Her "attained age" when the annuity "beg[a]n" in June 2014 was age 60. So Robbins did not receive an age reduction to her annuity at all. In the Board's view, even though Robbins retired when she was 59, she was 60 when her annuity "began," and thus no age reduction was warranted.

¶ 29    So that brings us to COLAs, the annual cost-of-living adjustments to the monthly annuities county employees receive. Again, we will limit our discussion to COLAs for employees like Robbins—with more than 20 but less than 30 years of service who retire before age 60. The parties agree that the governing statute is section 9-133(a) of the Pension Code. *Id.* § 9-133(a). Unfortunately, they do not agree on which language applies to Robbins.

¶ 30    There are three unnumbered paragraphs in section 9-133(a). The parties agree that the third paragraph is inapplicable and that Robbins falls either within the first paragraph (the Board's view) or the second one (Robbins's view). Here are the first two paragraphs, edited heavily to what is relevant to this appeal:

> "An employee who retired or retires *** having attained age 60 or more *** shall, in the month of January of the year following the year in which the first anniversary of retirement occurs, have his then fixed and payable monthly annuity increased by [3% per year]. ***
>
> An employee who retires on annuity before age 60 *** shall receive such [COLA] increases beginning with January of the year immediately following the year in which he attains the age of 60 years ***." 40 ILCS 5/9-133(a) (West 2014).

¶ 31    We start with the first paragraph above. The first paragraph states the general rule for COLA eligibility, subject to the exception in the second paragraph. The general rule in the first paragraph applies potentially to all county employees—it includes (1) an employee who "retired" before age 60 but has now turned 60 and (2) an employee who "retires" at or after age 60. *Id.* And these employees have opted to draw their annuities—thus the reference in the language to their "then fixed and payable monthly annuity." *Id.* (Which only makes sense; a COLA is an add-on to an annuity; no point in a COLA if one is not yet drawing her annuity.) That description covers every employee with Robbins's years of service who could be eligible for a COLA. These employees are entitled to a COLA in January of the year following the first anniversary of retirement.

¶ 32    (That is enough for our purposes here. The careful reader will find holes in that first paragraph of section 9-133(a). For one, some employees retire long before age 60, but they are not entitled to a COLA until they turn 60. They could wait 10, 15 years for that first COLA at age 60. So it is not altogether accurate when the first paragraph pegs the first COLA at the January after "the first anniversary of retirement." *Id.* An employee could be 42 or 48 or 54 on their first anniversary of retirement and be nowhere near their first COLA. Clearly, to make this all work, and there is no disagreement among the parties here, the first COLA arrives in the January after the first anniversary of retirement *as long as the employee is at least 60 years old* at that time. We note this flaw not because it matters to this case but because this language might seem confusing otherwise. The Board politely refers to this flaw as a "loophole.")

¶ 33    The second paragraph is the exception to the general rule, a more specific subset of employees—an "employee who retires on annuity before age 60." *Id.* In other words, an employee who both (1) retired before age 60 *and* (2) was "on annuity" before age 60. That employee gets her first COLA in January of the year following her sixtieth birthday—for Robbins, January 2015, compared to January 2016 under the first paragraph of section 9-133(a).

¶ 34    Robbins says she falls within this exception in the second paragraph of section 9-133(a), that she was "on annuity" before age 60. Her argument is this: before age 60, she did everything required of her to receive an annuity—she applied for her annuity (in April 2014), and she

retired on May 16, four days before turning 60. She says retiring "on annuity" is not dependent on when she first started *receiving* her annuity (in June, after having turned 60) but when she became *entitled* to that annuity (on May 16, her date of retirement, at age 59), even if it was not yet due and owing. She says the Board has no statutory basis for arguing that "on annuity" must mean actually receiving the annuity.

¶ 35 The phrase "on annuity" in section 9-133(a) is not defined. That phrase appears 12 times within article 9 but has never been the subject of litigation, and none of the other contexts in which it appears gives us much insight into our question.

¶ 36 Presumably, everyone would agree that, generally speaking, "retir[ing] on annuity before age 60" refers to an employee who retired and is already receiving an annuity, both before age 60. Most of the time, that definition would suffice. The reason we must split hairs here is due to the unique circumstances of this case: during the small window of time between Robbins's retirement on May 16 and the date her first annuity payment was due (June 1), she turned 60.

¶ 37 So this case requires us to precisely answer: what is the literal first moment that someone "retires on annuity?" The retirement part is easy—here, May 16, 2014. And Robbins says that, since she had already applied for the annuity before retiring, she was "on annuity" the moment she retired. In other words, the "on annuity" part of "retir[ing] on annuity," to Robbins, means *applying* for the annuity.

¶ 38 But that argument divorces the COLA language in section 9-133(a) from the statutory annuity formula Robbins chose; it treats the calculation of all annuities the same, and they are not all the same. Robbins chose a particular statutory calculation of her annuity benefit—the "minimum annuity" formula under section 9-134. That section specifically defines how that annuity should be calculated—it is pegged to the age of the employee on the date the "annuity is to begin." *Id.* § 9-134(a). And as noted above, the annuity "begins," under section 9-119, on the first of the month following the occurrence of the event that triggers the right to an annuity. *Id.* § 9-119.

¶ 39 For section 9-134 annuities, the date the employee chooses to start drawing her annuity in accordance with state law is—and really must be—the operative date for being "on annuity" under section 9-133(a). What other date would make sense? The retired or soon-to-be-retiring employee wishes to start drawing her section 9-134 annuity; she is aware of an age reduction if she does so before age 60; section 9-134 clearly tells her that the operative date for determining an age reduction, if any, is her "age when [the] annuity is to begin" (*id.* § 9-134(a)); section 9-119 tells her when the annuity is to begin—the first of the month following the occurrence of two events, her application for the annuity or her retirement, whichever of those comes later.

¶ 40 So the employee knows, from reading section 9-134(a) along with section 9-119, when her annuity is to begin and what that means for her monthly annuity calculation. In the case of Robbins, that date was the first of June 2014. And she would understand that, because her age when the annuity was to begin would be 60 years old, she would not receive any age reduction at all. (And in fact, she did not.)

¶ 41 It is difficult to imagine, then, that this employee would believe that she was "on annuity" *not* on that date that she, in fact, chose for the start of her annuity but rather on the date that she happened to have *applied* for that annuity—or on her age at retirement, whichever came later. Nothing in these statutes should have given her that notion.

¶ 42 Consider this from another angle. Robbins's argument is that when the later of two things occurs—retirement and applying for the annuity—the employee is "on annuity." In her case, she applied first (April 2014) and then retired (May 16). But if she is correct, the order of these two events should not matter. So let us reverse the order and test the theory.

¶ 43 Suppose employee *A*, just like Robbins (more than 20, less than 30 years of service), retires at age 45 in the year 2010. She decides that a good time to start her annuity—a section 9-134 annuity, like Robbins—would be when she is age 55. So on April 5, 2020, she tells the Fund that she would like her annuity to start on May 1, 2020. Under Robbins's theory, employee *A* was "on annuity" as of April 5, the date of her application, even though she specifically asked and planned for that annuity to begin on May 1. That makes no sense. And it would be inconsistent with a harmonious reading of sections 9-134(a) and 9-119.

¶ 44 We must be very clear about this: We are not saying that Robbins was first "on annuity" as of June 1, 2014, simply because that is the date the first check was supposed to arrive. We are saying it is June 1, 2014, because the statute providing for the annuity calculation that Robbins herself chose, section 9-134, *specifies* that the start date of the annuity is the critical point for calculating the annuity and any age reduction. True, it would be simpler if section 9-134(a) expressly adopted section 9-119's annuity start date (something like "when the annuity is to begin *under section 9-119*"). But we are given the language we are given, and in context, it is clear that section 9-134 was adopting section 9-119's annuity start date.

¶ 45 We reiterate that the journey through these statutes was difficult. The Board's interpretation is the far superior one and the one we adopt, but we would not fault Robbins or anyone else for finding these laws incredibly difficult to navigate. These statutes are at times incomplete and at times murky, at best. We strongly urge the General Assembly to consider a rewrite.

¶ 46 We agree with the Board that the date Robbins was first "on annuity" was the first of June 2014, by which time she was 60 years old. The second paragraph of section 9-133(a) is thus inapplicable. Based on the first paragraph of section 9-133(a), her first COLA was not due until January 2016. The circuit court was correct to uphold the Board's determination.

¶ 47                                                  II

¶ 48 Robbins also complains about procedural irregularities in the hearing process itself. We alluded to it briefly in the introduction: Initially, the hearing officer ruled in favor of Robbins, believing that she was "on annuity" as of her date of retirement, because section 9-127 uses that date to calculate the annuity. The hearing officer's read of section 9-127 was right; the problem was that Robbins did not *choose* a section 9-127 annuity: She used the section 9-134(a) calculation, so section 9-127 was irrelevant. After initially losing before the hearing officer, the Fund sought reconsideration, making this very point. The hearing officer allowed the motion and ultimately reversed the initial decision, instead ruling in favor of the Fund.

¶ 49 Robbins says that was unfair. She says the Board's rules do not permit reconsideration of decisions at the hearing level and that any new argument raised by the Fund upon reconsideration was forfeited or barred by estoppel.

¶ 50 If this were a situation where some procedural irregularity led to Robbins being surprised with new evidence or not being allowed to present certain evidence or anything of that nature that might have deprived her of the opportunity to be heard or left us with a factual record that we questioned, we would be sympathetic to this claim. But none of that is alleged. The facts

here are undisputed. The only question before us is the purely legal one of whether the Board correctly interpreted a statute with undisputed facts. Given our *de novo* standard of review, whether the Board should have allowed the Fund a second bite at the apple in its legal argument plays no role in whether the Board interpreted the law correctly, our only concern here.

¶ 51 In a single sentence in her opening brief contained within this procedural argument, Robbins refers to a meeting she had in 2011 with a representative of the Fund; she claims that she "reasonably relied on the Fund's representation that if she retired on 5/16/2014 her COLA start date would be 01/01/2015." That single sentence, buried within an argument about how the hearing officer should be estopped from changing his decision, without citation of any authority for how this 2011 meeting leads to relief for Robbins, is insufficient to fully develop that argument for our review, and we deem it forfeited. See Ill. S. Ct. R. 341(h)(7) (May 25, 2018); *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010); *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33 (party's "fleeting, one-sentence argument is wholly deficient and violates Rule 341(h)(7)").

¶ 52 We thus find nothing warranting reversal in Robbins's procedural arguments.

¶ 53                                                    III

¶ 54 Finally, Robbins claims the Board's "faulty and inconsistent interpretation" of section 9-133(a) amounts to an unconstitutional diminution of benefits under the pension clause of the Illinois Constitution. See Ill. Const. 1970, art. XIII, § 5. As stated, we do not find the Board's interpretation faulty or inconsistent. We find no merit to the claim of an unconstitutional diminution of benefits.

¶ 55                                            CONCLUSION

¶ 56 The judgment of the circuit court is affirmed.

¶ 57 Affirmed.